BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
Jessica A. McElroy (SBN 299919)
JMcElroy@BlankRome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:    424.239.3434

Attorneys for Defendant,
ROUNDPOINT MORTGAGE
SERVICING CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>Defendant. | Case No. 3:20-cv-00250-MMC<br><br>**DEFENDANT ROUNDPOINT MORTGAGE SERVICING CORPORATION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>[*Filed concurrently with Motion, Certificate of Interested Parties, and [Proposed] Order*]<br><br>Date:        May 15, 2020<br>Time:        9:00 a.m.<br>Location:   Courtroom 7 (19th Floor)<br>                   450 Golden Gate Avenue<br>                   San Francisco, CA 94102<br><br>Complaint Filed: January 13, 2020<br>Trial Date:        None Set |

141581.00705/122601296v.1

1  **TO THIS HONORABLE COURT, AND ALL PARTIES AND THEIR ATTORNEYS OF**

2  **RECORD:**

3      **PLEASE TAKE NOTICE** that in support of defendant RoundPoint Mortgage Servicing

4  Corporation's ("Defendant" or "RoundPoint"), motion to dismiss ("Motion to Dismiss") or, in the

5  alternative, motion to strike ("Motion to Strike") portions of plaintiff Amye Elbert's ("Plaintiff")

6  complaint ("Complaint"), RoundPoint respectfully requests that the Court take judicial notice of the

7  following documents:

8      1.      Deed of Trust executed by Plaintiff and John B. Fulgham and recorded with the

9  Official Records of the Contra Costa County Recorder's Office on October 23, 2015, a copy of

10 which is attached as Exhibit "A" to Plaintiff's Complaint.  Attached hereto as **Exhibit A** is a true

11 and correct copy of the Deed of Trust.

12     2.      RoundPoint's webpage entitled "Easily Manage Your Payments," available at

13 https://www.rpmservicing.com/payments, last accessed March 1, 2020.  Attached hereto as **Exhibit**

14 **B** is a true and correct copy of a pdf-formatted version of the webpage.

15     3.      Relevant excerpts of the Administration of Insured Home Mortgages Handbooks

16 ("HUD Handbook"), including Chapter 4, § 4330.1, available at

17 https://www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1, last accessed

18 March 1, 2020.  Attached hereto as **Exhibit C** is a true and correct copy of relevant excerpts of the

19 HUD Handbook.

20     Exhibits A through C are relevant to the determination of the matter presently before the

21 Court and appropriately are the subject of judicial notice.  *Lee v. Los Angeles,* 250 F.3d 668, 688

22 (9th Cir. 2001); *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).  Courts may take judicial

23 notice of documents filed and orders or decisions entered in any federal or state court.  *See United*

24 *States v. Warneke*, 199 F.3d 906, 909, n. 1 (7th Cir. 1999); *Holder v. Holder*, 305 F.3d 854, 866 (9th

25 Cir. 2002); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003).  Judicial notice may be necessary

26 to prevent a plaintiff from "deliberately omitting…documents upon which their claims are based" in

27

28

**DEFENDANT ROUNDPOINT MORTGAGE SERVICING CORPORATION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

1    an effort to escape a Rule 12(b)(6) dismissal.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.

2    2007) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

3          Pursuant to rule 201(b)(2) of the Federal Rules of Evidence, "[t]he court may judicially

4    notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily

5    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

6    201(b)(2); *see also Intri-Plex Techs., Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007)

7    (court may take judicial notice of facts "as long as the facts noticed are not subject to reasonable

8    dispute"). Exhibits A and C, identified above, are matters of public record, and their contents are

9    facts which are not subject to reasonable dispute because they are capable of accurate and ready

10   determination by resort to sources whose accuracy cannot reasonably be questioned, namely, the

11   Contra Costa County Recorder's Office and the office of the Secretary of the U.S. Department of

12   Housing and Urban Development.  Fed. R. Evid. 201(b).  As such, Exhibits A and C are the proper

13   subject of judicial notice.

14         Exhibit B may be incorporated by reference.  The "incorporation by reference" principle

15   permits the Court, on a motion to dismiss, to consider documents that are "referred to in the

16   plaintiff's complaint and are central" to plaintiff's claims.  *Baxter v. Intelius, Inc.*, No. SACV09-

17   1031, 2010 U.S. Dist. LEXIS 104218 (C.D. Cal. Sept. 16, 2010).  As noted in *Said v. Encore Senior

18   Living LLC*, EDCV 11-01033, 2012 U.S. Dist. LEXIS 23944 (C.D. Cal. Feb. 24, 2012), "the Ninth

19   Circuit has 'extended the doctrine of incorporation by reference to consider documents in situations

20   where the complaint necessarily relies upon a document or the contents of the documents are alleged

21   in a complaint, the document's authenticity is not in question and there are no disputed issues as to

22   the document's relevance.'"  *Id.* (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.

23   2010)).  If a plaintiff fails to attach to the complaint documents upon which the complaint is based,

24   the defendant may attach such documents to a Rule 12(b)(6) motion to show that they do not support

25   the plaintiff's claim.  *Lessard v. Trinity Protection Servs.*, 2010 U.S. Dist. LEXIS 80582 (E.D. Cal.

26   Aug. 3, 2010) (*citing Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other

27   grounds by Galbraith v. Cty. of Santa Clara*, 307 F. 3d 1119, 1127 (9th Cir. 2002)); *see also Grill v.

28

**DEFENDANT ROUNDPOINT MORTGAGE SERVICING CORPORATION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

1   *BAC Home Loans Servicing LP*, 2011 U.S. Dist. LEXIS 3771 (E.D. Cal. Jan. 13, 2011) ("Even if a

2   document is not attached to a complaint, it may be incorporated by reference into a complaint if the

3   plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

4   claim").

5          Accordingly, the Complaint specifically alleges that RoundPoint charges and collects "illegal

6   processing fees when borrowers pay their monthly mortgage by phone or online."  Complt., ¶ 1.

7   Exhibit B is a copy of RoundPoint's "Easily Manage Your Payments" webpage, on which Plaintiff's

8   allegations are based and, because its contents are relied upon in the Complaint, Exhibit B may be

9   incorporated by reference and considered in relation to RoundPoint's Motion to Dismiss and Motion

10  to Strike.

11         Documents considered by the court as judicially noticeable or incorporated by reference are

12  assumed to be true, and a court should ignore allegations contained in a complaint which contradict

13  such documents.  *See Watermark Granite La Quinta, LLC v. American Int'l Speciality Lines Ins.*

14  *Co.*, No. 10cv1011-L, 2011 U.S. Dist. LEXIS 54835, at *10 (S.D. Cal. May 23, 2011) (court need

15  not assume truthfulness of allegations contradicted by documents).

16

17  DATED:  March 6, 2020                    BLANK ROME LLP

18

19

20                                          By: */s/ Jessica A. McElroy*_____
                                                 Cheryl S. Chang
21                                               Jessica A. McElroy
                                            Attorneys for Defendant
22                                          ROUNDPOINT MORTGAGE SERVICING
                                            CORPORATION

23

24

25

26

27

28
**DEFENDANT ROUNDPOINT MORTGAGE SERVICING CORPORATION'S REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

# **Exhibit A**

RECORDING REQUESTED BY

**FIDELITY TITLE COMPANY**

*Escrow # 3081500993 MG*

Recording Requested By:
FIRST CALIFORNIA MORTGAGE COMPANY

2015P022323100014
**CONTRA COSTA Co Recorder Office**
**JOSEPH CANCIAMILLA, Clerk-Recorder**
**DOC-2015-0223231-00**
**Acct 1192-Fidelity National Title Concord**
**Friday, OCT 23, 2015 08:27:18**
**MOD   $14.00|REC   $24.00|FTC   $13.00**
**DAF   $2.70|REF   $0.30|RED   $1.00**
**ERD   $1.00|         |**
**Ttl Pd   $56.00         Nbr-0002424488**
**MSN/RC/1-14**

And After Recording Return To:
FIRST CALIFORNIA MORTGAGE
COMPANY
1435 N. MCDOWELL BLVD., 300
PETALUMA, CALIFORNIA 94954
Loan Number: █████████

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** █████████████                                **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated     OCTOBER 19, 2015    , together with all Riders to this document.
**(B) "Borrower"** is JOHN B. FULGHAM AND AMYE L. ELBERT, HUSBAND AND WIFE AS JOINT TENANTS
BORROWER'S ADDRESS IS 2409 GRIMSBY DRIVE, ANTIOCH, CALIFORNIA 94509.

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is FIRST CALIFORNIA MORTGAGE COMPANY

Lender is a              A CALIFORNIA CORPORATION              organized and existing under the laws of              CALIFORNIA
Lender's address is  1435 N. MCDOWELL BLVD., 300, PETALUMA, CALIFORNIA 94954
**(D) "Trustee"** is FIDELITY NATIONAL TITLE COMPANY
2150 JOHN GLENN DRIVE SUITE 400, CONCORD, CALIFORNIA 94520

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security**

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                          Page 1 of 13                          *DocMagic eForms*
www.docmagic.com

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated          OCTOBER 19, 2015          .
The Note states that Borrower owes Lender   THREE HUNDRED NINETY-SEVEN THOUSAND
SIX HUNDRED SIXTY-FOUR AND 00/100          Dollars (U.S. $397,664.00          )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          NOVEMBER 1, 2045          .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Condominium Rider             ☐ Other(s) [specify]

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                          Page 2 of 13                          *DocMagic eForms*
                                                                                    *www.docmagic.com*



## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    CONTRA COSTA                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 075-311-004

### SEE ATTACHED EXHIBIT "A"

which currently has the address of  2409 GRIMSBY DRIVE
                                                              [Street]

ANTIOCH                                      , California  94509          ("Property Address"):
[City]                                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.     Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                    Page 3 of 13                    DocMagic eForms
                                                                                            www.docmagic.com

check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan



Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA   09/14/15                         Page 5 of 13                         *DocMagic eForms*
www.docmagic.com



All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.



Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums



secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;



and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    **14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

    All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.



However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

    **19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    **20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                                    Page 10 of 13                         *DocMagic eForms*
www.docmagic.com*

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                                Page 11 of 13                                *DocMagic eForms*
                                                                                                  www.docmagic.com



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
JOHN B. FULGHAM            -Borrower

_____ (Seal)
AMYE L. ELBERT            -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:

_____

Witness:

_____

—————————————— [Space Below This Line For Acknowledgment] ——————————————

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of CONTRA COSTA )

On 10/19/2015 before me, T. Burgueno, Notary Public
Date                                    Here Insert Name and Title of the Notarizing Officer

personally appeared JOHN B. FULGHAM AND AMYE L. ELBERT

,
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

T. BURGUENO
COMM. #2027068
Notary Public - California
Contra Costa County
My Comm. Expires June 29, 2017

Signature of Notary Public

Notary Seal

Loan Originator: KENYON WELLS CANTINO, NMLSR ID 173928
Loan Originator Organization: FIRST CALIFORNIA MORTGAGE COMPANY, NMLSR ID 24055

CALIFORNIA FHA DEED OF TRUST - MERS
CADOTZ2.FHA  09/14/15                    Page 13 of 13                    DocMagic eForms
                                                                          www.docmagic.com



# EXHIBIT A

**Order No.:**   FCHC-3081500993

**For APN/Parcel ID(s):  075-311-004**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF ANTIOCH, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 345, MAP OF SUBDIVISION 5299, FILED FEBRUARY 21, 1979, MAP BOOK 222, PAGE 7, CONTRA COSTA COUNTY RECORDS, AND CERTIFICATE OF CORRECTION RECORDED DECEMBER 3, 1979, BOOK 9642, OFFICIAL RECORDS, PAGE 575.

EXCEPTING THEREFROM:

RIGHTS EXCEPTED IN THE DEED FROM EVERETT E. BETTENCOURT, ET AL, RECORDED FEBRUARY 1, 1966, BOOK 5048, OFFICIAL RECORDS, PAGE 322, AS FOLLOWS:

AN UNDIVIDED 1/2 INTEREST IN ALL OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES BELOW A POINT 500 FEET BELOW THE SURFACE OF SAID LAND, TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE, PASS THROUGH AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN THE UPPER 500 FEET THEREOF.

# **<u>Exhibit B</u>**



SEARCH    LOG IN    PAY NOW

I HAVE A LOAN

I NEED A LOAN

MARKETPLACE

PAYMENTS

INSURANCE

RESOURCES

NEW CUSTOMERS



# Easily Manage
# Your Payments

Everything you need in one place makes it easy for you to stay in control. From making a one-time payment, setting up recurring payments, and to access to resources when you're having trouble making a payment.

**PICK A PATH**

| MAKE A PAYMENT | CAN'T MAKE A PAYMENT | ALREADY MADE A PAYMENT | PAYMENT OPTIONS |

## PAY ONLINE

Make a convenient one-time payment or set up recurring payments. It's simple and only takes a few minutes to setup. We'll email you each month on your desired payment date in case you want to change or cancel the service.

**ONE-TIME PAYMENT ›**    **RECURRING PAYMENTS ›**



## CAN'T MAKE A PAYMENT?

If you're having trouble making your mortgage payment, don't hesitate to reach out to us. We have a dedicated team ready to walk you through all of the options available to you.

PAYMENT HELP ›

## ALREADY MADE A PAYMENT?



‹ I PAID ROUNDPOINT

I PAID MY PREVIOUS SERVICER ›



CONTACT >

**Via RoundPoint Online or Phone:** If you submitted a payment to us online or by phone, please allow 1 business day for the amount to reflect on your account. Please note: It could take up to 3 business days for the funds to be withdrawn from your bank account.

**Via Check:** If you mailed a payment to us, please allow 7–10 days to account for mailing and receipt. If the payment has not been posted after that time, please confirm the payment was cleared with your financial institution. If the check has been cleared, please be prepared to share that record when you reach out to us.

**Via Bill Payment Service:** If you submitted a payment to us using a third-party bill payment service, the payment may have been withdrawn from your bank account before being paid to us. You can contact the bill payment service to find out the status of the payment to help us locate the funds.

PAYMENT OPTIONS

# Pick a payment option
## that's most convenient for you

### ONLINE

Log in to RoundPoint Online to make a one-time payment or set up automatic withdrawals.

**This payment option is free.**

ONLINE PAYMENT ›

### PHONE (AUTOMATED SYSTEM)

Call (877) 426-8805 to make a one-time payment or set up recurring payments.

**A $10 fee will apply.**

### MAIL

Mail a check or money order to one of the following addresses:

RoundPoint Mortgage Servicing Corporation
PO Box 674150 Dallas, TX 75267-4150

Overnight Payments
RoundPoint Mortgage Servicing Corporation
ATTN: Lockbox 674150
4400 Amon Carter Blvd., Suite 110
Fort Worth, TX 76155.

**This payment option is free.**

### MONEYGRAM

Visit any MoneyGram location to make a same-day cash payment. When filling out the payment form, be sure to include your loan number and our receive code (7302).

**A $9.50 fee will apply at Walmart.**

**A $9.99 fee will apply at all other MoneyGram locations.**

**Please visit www.moneygram.com for more information**

PAY NOW ›

### PHONE (LIVE PERSON)

### ONLINE BILL PAY

Call (877) 426-8805 to make a one-time payment or set up recurring payments with one of our customer service representatives.

**A $12 fee will apply.**

You can use your financial institution's bill payment service to send the payment to us electronically. Don't forget to include your RoundPoint loan number.

**Note:**
Some third-party bill payment services will withdrawal the funds from your bank account before paying us. We'll credit your account when we receive the payment from the third-party service.

## GET IN TOUCH

# Didn't find what
# you're looking for?

Operating hours:
Monday through Friday 8:00 a.m. - 9:00 p.m.
Saturday 10:00 a.m. - 3:00 p.m. ET.

CONTACT US >



## roundpoint

© 2020 RoundPoint Mortgage
RoundPoint Mortgage Servicing Corporation is a Washington Consumer Loan Company Licensee

**NMLS ID 18188**

For additional information, please visit:
NMLS CONSUMER ACCESS

**QUICK LINKS**

LOG IN

GET A LOAN

MARKETPLACE

CONTACT US

**COMPANY**

ABOUT US

CAREERS

CLIENTS/SELLERS

CULTURE

PRESS

**RESOURCES**

PAYMENTS

NEW CUSTOMERS

FORMS LIBRARY

FAQ

GLOSSARY

CONSUMER OMBUDSMEN

**LEGAL**

FEES

LICENSING

PRIVACY

CALIFORNIA PRIVACY

TERMS

The Personal Household Economy " You understand and acknowledge that (a) the purchase of insurance or other similar products from a particular source is not a condition to the provision of, and will not affect the terms of any loan or extension of credit by RoundPoint Mortgage Servicing Corporation ("RoundPoint") or its affiliates, (b) insurance and other similar products are available through insurance agents not associated with RoundPoint or any of their affiliates, (c) the choice of another insurance provider will not affect a decision relating to, or the terms of, any loan or extension of credit by or its affiliates and (d) you accept and assume full responsibility for the evaluation, selection and suitability of insurance or other similar products. Insurance products are offered through RoundPoint Mortgage Solutions, LLC, an affiliate of RoundPoint (collectively RoundPoint) (and powered by Matic Insurance Services, Covr Financial Technologies, and C&F Insurance Agency). Neither RoundPoint, RoundPoint Mortgage Solutions, nor any of their U.S. affiliates underwrite any policy of insurance. Insurance products may not be available in all states. RoundPoint may be compensated in connection with these programs. By clicking the above links, you will leave RoundPoint Mortgage Serving Corporation website and go to a website operated by a third party. RoundPoint does not provide, nor is it liable for, any of the products, services or content on the third party website. RoundPoint encourages you to review the third party 's privacy policy and security level, which may differ from that of RoundPoint.

# **<u>Exhibit C</u>**

4330.1 REV-5

---

CHAPTER 4.   FEES AND CHARGES AFTER ENDORSEMENT

4-1     ACCEPTABLE FEES AND CHARGES - GENERAL (24 CFR 203.552).   HUD
        regulations specify that the mortgagee may collect "reasonable and
        customary" fees and charges from the mortgagor after the mortgage is
        insured and as authorized by HUD.

        A. Fee Basis.  The basic rule governing all the amounts shown in
           this chapter that may be charged for a service is that all fees
           must be:

                1. "reasonable and customary" for that area of the country; and

                2. based on actual cost of the work performed (including actual
                   out-of-pocket expenses); and

                3. within the maximum amount allowed by HUD.

                NOTE: Under no circumstances may a post-endorsement fee or
                      charge be based upon a percentage of either the face
                      amount or the unpaid principal balance of the mortgage.

        B. Fee Regulators.  Services for which a fee may be assessed and the
           amounts that may be collected from mortgagors are either
           established by HUD regulations, HUD Headquarters, HUD Regional
           Offices and/or HUD Field Offices having jurisdiction over the
           mortgage and in accordance with the Federal National Mortgage
           Association (FEMA) fee schedules.  (See Paragraph 4-8.)

                NOTE:   A mortgagee may be in violation of HUD regulations
                        should it be collecting a fee (regardless of when the
                        fee is actually collected) for:

                        1. a service which in not specifically authorized in
                           Paragraph 4-1C; or

                        2.a service not authorized in advance by one of
the
fee regulators above.

                        3.charging a fee that does not comply with the
rule
stated in Paragraph 4-1A.

---

        4330.1 REV-5

---

                              4.a service for which a fee is prohibited
(Paragraph
4-12).

        C.Services For Which Charges May Be Assessed.  A "reasonable and
customary" fee (determined in accordance with Paragraph 4-1A) may
be assessed for the following services:

                1.late charges as set forth in Paragraph 4-2; (Established by
the security instrument).

                2.processing and reprocessing checks in accordance with
Paragraph 4-3 which have been returned as uncollectible;
(Established by HUD Regional Offices).

                3.processing a change of ownership by assumption in accordance
with Paragraph 4-4; (Established by HUD Headquarters).

                4.processing a change of ownership involving review of the
assumptor's credit, with or without release of the original
mortgagor from liability in accordance with Paragraph 4-4;
(Established by HUD Headquarters).

                5.substitution of hazard insurance policies at a time other
than at the expiration of an existing policy in accordance
with Paragraph 4-5; (Established by HUD Regional Offices).

                6.modification (recast) of the mortgage involving formal,
recorded documents in accordance with Paragraph 4-6;
(Established by the local HUD Field Offices).

                7.processing partial releases of the security in accordance
with Paragraph 4-7; (Established by the local HUD Field
Offices).

                8.attorney and trustee fees associated with mortgagor
reinstatement in accordance with Paragraph 4-8A;
(Established by the Federal National Mortgage Association
(FNMA) Schedule of Standard Attorney's and Trustee's Fees).
The Department considers the FNMA fee schedule to be
reasonable and customary.

_____

9/944-2

4330.1 REV-5

_____

                    NOTE:allowable attorney fees with respect to Claims for
Insurance Benefits are established by
Headquarters.

                9.annual service charges in accordance with Paragraph 4-9;
(Established by HUD Headquarters).

10.trustee and recording fees associated with satisfaction referred to in Paragraph 4-10; (Established by the local HUD Field Offices).

11.property inspections and preservation expenses as referred to in Paragraph 4-11; (Established by Regional HUD Offices).

12.FAXing of payoff statement, upon request, (Established by HUD Headquarters.  See Paragraph 4-12C2.)

*    D.   Services For Which Charges May Be Assessed After Established Number Of Times Has Been Exhausted.  HUD has established the number of times a service can be provided at no charge to the mortgagor.  After the established number of times has been exhausted, each time a service is performed, the cost can be charges to the mortgagor.  The following services with established fees are considered reasonable and customary for all sections of the country.

1.Providing a copy of the mortgage or deed of trust: if the copy is a duplicate of what had already been provided to the mortgagor, a maximum fee of $10 is allowable.

2.Providing a copy of the mortgage note:  if the copy is a duplicate of what has already been provided to the mortgagor, a maximum fee of $10 is allowable.

3.Providing a copy of the settlement statement, gift letters and other documents:  a maximum fee of $10 is allowable.

4.Providing a new amortization schedule other than the schedule provided at closing:  a maximum fee of $15 is allowable.

5.Incorporating a borrower's name change into the servicer's loan system:  since this service is

_____

4-39/94

     4330.1 REV-5

_____

considered a routine servicing function, no fee is approved.

6.Providing payoff statements:  no charge may be made for the first two such statements provided per calendar year; the mortgagee may charge $10 for providing each additional statement requested.

7.Faxing any payoff statement (upon request of mortgagor): a maximum fee of $5 is allowable.

8.Providing replacement coupon books:  a maximum fee of $5 is allowable.

9.Re-analyzing escrow accounts and providing new coupon books: since these are normal servicing functions no fee is allowable.

10.Providing a payment history to the mortgagor (other than the current year and one prior year):  a maximum fee of $5 is allowable.

11.Verifying the mortgage to prospective creditor: this covers requests from other lenders to verify the status of an existing loan (typically in connection with a refinance application).  A $20 fee is allowed as long as the mortgagor has given the new lender a written authorization for the release of the information to the new lender and for the fee.

12.Providing duplicate year-end statements:  a maximum fee of $5 is allowable.

13.Processing and/or reprocessing of checks returned as uncollectible:  if a State has a set fee, a mortgagee may charge up to the maximum amount; otherwise, the maximum allowable fee is established by HUD Regional Offices.   *

4-2LATE CHARGES (24 CFR 203.25).  Assessment of a late charge is intended only to reimburse the mortgagee for the added expense of collection activities and to serve as motivation to the mortgagor to make timely payments (also, see Paragraph 7-7F).

A.Date Late Charge May Be Assessed.  HUD regulations 24 CFR 203.25 and the security instrument provide the mortgagee with the option of collecting a late charge if a payment is received by the mortgagor more than 15

_____

9/944-4

4330.1 REV-5

_____

days after the due date, the first day of the month, (i.e., the payment is received by the mortgagee after the 16th of the mouth in which it is due).

| | | | |
|---|---|---|---|
| EXAMPLE:  Installment Due Date | = | March 1 | |
| Mortgage Is Delinquent | = | March 2 | |
| 15th Day After Installment Due Date; | = | | March 16 |
| Earliest Date Late Charge May Be Assessed | = | | March 17 |

NOTE:A late charge may not be assessed against a Payment

UNTIL the 17th of the month which is the 16th day after
the installment due date.

        B.Mortgagee's Option To Assess Late Charges.  HUD does not require
that a mortgagee enforce the late charge provision of the
security instrument.  However, if the mortgagee chooses to assess
a late fee on a delinquent payment, HUD expects it to prudently
exercise this option and the late fee assessment must conform to
the requirements set forth under Paragraph 4-2.

        C.Percentage That May Be Assessed (24 CFR 203.25).

            1.Amount.  The actual percentage of the monthly payment that
the mortgagee may collect is governed by the regulations,
security instrument, and state law.

                a.Mortgages Insured Before January 1, 1977.  Security
instruments of mortgages insured before January 1,
1977, provide for a late charge of up to two percent of
each payment in arrears.

                b.HUD regulations (24 CFR 203.25) provide for a maximum
charge of four percent of each payment that is in
arrears.  Older mortgages using post-1976 HUD forms
generally provide for a four percent charge in the
security instrument.  More recent forms prepared by
private sources to conform to current HUD requirements
provide for the late charge in the note; HUD does not
suggest any amount other than one that conforms to the
regulations.  In all cases, the late charge stated in
the note or security instrument

---

4-59/94

    4330.1 REV-5

---

                shall prevail unless it exceeds four percent.

            NOTE:If a mortgage is insured under Section 235, the late
charge may be assessed against the mortgagor's portion
of the monthly payment only.

        D.   Computing Late Charges.  Late charges are computed on
*       the full monthly payment (Principal, interest, taxes
        and insurance) due from the mortgagor in the month of      *
        computation.  Previously uncollected late charges may not be
added to the monthly payment due when computing the present late
charge.  Multiple delinquent payments are considered separately,
with a late charge computed on each individual monthly payment.

            NOTE:When the mortgage is insured under Section 235, OR the
mortgage is subject to a buy-down, only the mortgagor's
portion of the monthly payment is used when computing a

late charge.

       E.Advance Demand Notice (24 CFR 203.554).  Before a mortgagee may enforce the obligation to pay a late charge or before the mortgagee may return a mortgage payment to the mortgagor for failing to include the late charge amount, the mortgagor must have been provided an advance notice (see Paragraph 4-2F).  This advance notice may be in the form of:

       1.a monthly payment coupon issued to accompany the mortgagor's monthly payment; or

       2.an individual monthly billing statement which was issued to accompany the mortgagor's monthly payment.

       3.a written demand to the mortgagor to pay the late charge.

       F.Content Of Advance Notice.  In order to comply with HUD's requirement, the advance notice sent to the mortgagor must provide the following information:

       1.the due date of the payment;

       2.the amount of the regular monthly payment;

       3.the date on which the late charge will be imposed; and

---

9/944-6

4330.1 REV-5

---

       4.the amount of the late charge (or the full amount now due which consists of the regular monthly payment plus the late charge amount).

       G.Application Of The Late Payment (24 CFR 203.554).  If a monthly payment is received on or after the 17th of the month in which it is due and does not include the late charge, the late charge may not be deducted from that monthly payment.  That payment must be applied in the order set forth in 24 CFR 203.24 as follows:

       1.to MIP, if any;

       2.to other escrow items;

       3.to interest;

       4.to principal; and

       5.to late charges.

       H.Application Of Subsequent Payments To Unpaid Late Chargers) (24 CFR 203.554(b)).  Once the demand notice has been sent to the

mortgagor, if the late charge is not included in the subsequent
payment, the mortgagee may treat that payment, or any subsequent
payment, in accordance with HUD's partial payment rules.  (See
Paragraph 7-9.)

       I.Waiver Of Late Charges.  Mortgagees are expected to exercise good
judgment when levying late charges.  When the reason for the late
payment is due to the mortgagee's failure to perform or due to
circumstances obviously beyond the mortgagor's control,
mortgagees are expected to waive the late charges.

       J.Default/Foreclosure Due To Unpaid Late Charge (24 CFR
203.554(a)).  A mortgage is technically in default if a late
charge is not paid within 30 days after it becomes due.  However,
foreclosure action may not be initiated on a HUD-insured mortgage
when the only delinquency is:

               1.unpaid late charges that are due on the account; and/or

               2.unpaid monthly payments that remain unpaid because the
mortgagee did not comply with the partial payment rule and
refused to accept a subsequent

---

4-79/94

    4330.1 REV-5

---

          payment which was insufficient to pay the full amount due
including late charges from the previous month or months.

       K.Surplus Escrow Application To Delinquency (24 CFR 203.550(b)).
Should a delinquency exist (due to unpaid late charges and/or
monthly payments) and an escrow surplus is discovered when
performing the annual escrow account analysis, this escrow
surplus may be applied to offset all or a portion of the
delinquency.  Application of surplus escrow funds in this manner
shall be considered as a cash refund to the mortgagor in
accordance with Paragraph 2-8A.  However, this is a method of
last resort; a mortgagee should first use the mechanism provided
in the regulations for enforcement of late charges as discussed
in H. above.

       A letter shall be sent to the mortgagor explaining the
application of the surplus escrow funds if all the surplus is
used toward the delinquency.  If only a portion of the escrow
surplus is needed to cure the delinquency, the letter shall give
the mortgagor the opportunity to select the method for adjusting
the remaining portion of the escrow surplus as shown under
Paragraph 2-4D.

4-3UNCOLLECTIBLE CHECKS.  Where a mortgagor's bank policy permits a check
must be presented for payment and returned unpaid twice before it can
be deemed "uncollectible".  When the check is returned to the

mortgagee unpaid the second time, a fee may be assessed on the
returned check.

4-4  ASSUMPTIONS.

        A.Maximum Allowable Fees.  Fees for processing assumptions must be
based on the mortgagee's actual costs and cannot exceed the
maximum amount authorized in this Handbook.  (See Chapter 6 for
requirements concerning assumptions.)  The maximum amounts
allowed by HUD for processing various types of assumption are as
follows:

            1."Simple" Assumptions.  Where no credit checks are required,
the maximum fee that may be charged is $125.00.

            2.Assumption With A Release of Liability.  Where a credit
check is required, the maximum fee that may be charged in
$500.00.

_____

9/944-8

4330.1 REV-5

_____

            3.Section 235 Assumptions.

                a.Assumption Without A Release of Liability and Where
Assistance Is Requested But Disapproved.  Where no
credit checks are required and the mortgagor applies
for assistance but is not considered eligible for
Section 235 subsidy the maximum fee that may be charged
is $140.00.

                b.Assumption Without A Release of Liability and Where
Assistance Is Requested and Approved.  Where a credit
check is not required and the Section 235 subsidy will
be terminated, the maximum fee that may be charged is
$185.00.

                c.Assumption With A Release of Liability and Where
Assistance Is Not Requested or Approved.  Where a
credit check is required and the Section 235 subsidy
will be terminated, the maximum fee that may be charged
is $500.00.

                d.Assumption With A Release of Liability and Assistance
Is To Continue.  Where a credit check is required and
the Section 235 subsidy will continue on behalf of the
assumptor, the maximum fee that may be charged is
$500.00.

            4.Section 143 of the Internal Revenue Code of 1986.  HUD does
not permit additional fees for ensuring that mortgage
revenue bond mortgages, when assumed, comply with

requirements of the subject Code.

      B.Allowable Charges Separate From Processing Fee.  Additional fees
that may be assessed for items in connection with an assumption
which are not included in the processing fee referred to in
Paragraph 4-4A are as follows:

      1.Credit Reports and Verification of Employment.  Fees or
charges for such things as credit reports and verification
of employment that must be collected by the mortgagee and
passed through, may be assessed in addition to the amounts
stated in Paragraph 4-4A for assumption processing fees.
These fees are non-refundable.

      2.Execution of Release Form.  Should a co-mortgagor or former
mortgagor request that he/she be provided an executed
release of liability form (i.e., Form HUD-92210.1, Approval
of Purchaser and Release of

---

4-99/94

    4330.1 REV-5

---

      Seller) (Appendix 7) separate and apart from the actual
processing of the creditworthiness review (with or without
Section 235 subsidy involvement), the maximum fee that may
be charged for the preparation and execution of this
additional document is $45.00.

      NOTE:A Form HUD-92210.1, prepared at the same time a
creditworthiness review is performed, is included
in the maximum $500 fee.  An additional fee of
$45.00 may only be assessed should a co-mortgagor
(or a previous assumptor) come in at a later date
and ask for an executed Form HUD-92210.1 as
evidence that he/she also had been released during
a previous creditworthiness review.

    C.Circumstances Governing Refund Of Processing Fees.  In the event
a mortgage is not assumed, processing fee refunds are to be made
in accordance with the following:

      1.if the assumptor's credit is rejected and HUD's consent to
release from liability is denied, the entire processing fee
may be retained by the mortgagee;

      2.if the assumptor's credit is approved but the closing of the
sale does not occur for reasons beyond the control of the
assumptor, the mortgagee is to refund one-half of the
collected fee.

4-5SUBSTITUTION OF HAZARD INSURANCE POLICIES.  When the mortgagor
arranges for a change of insurance coverage at a time other than the

normal time for renewing the hazard insurance policy, the mortgagee
may charge a reasonable and customary fee (set by the Regional Office
having jurisdiction over the mortgage) for handling the replacement
policy.

        NOTE:This does not apply to an assumption where the new mortgagor
prefers to use a company and/or agent other than the one
used by the former mortgagor, even if it does not fall
within the normal time for renewing the policy on that
particular mortgaged property.

4-6MODIFICATION (RECAST) OF MORTGAGES.  Where a mortgagee grants relief
to a defaulting mortgagor by modifying (or recasting) the mortgage, a
fee, considered by the local HUD Field Office to be "reasonable and
customary" for that area

_____

9/944-10

4330.1 REV-5


_____

of the country, may be assessed for processing and recording the
modification.

4-7PARTIAL RELEASE OF SECURITY.  Costs involved in processing partial
releases of the security (whether as a result of condemnation or of
voluntary action by the mortgagor) are the mortgagor's responsibility
and may be passed on to the mortgagor.  However, any costs passed on
to the mortgagor must be in an amount that is considered by the local
HUD Field Office to be "reasonable and customary" for that service in
that area of the country.

4-8   ATTORNEY'S AND TRUSTEE'S FEES - MORTGAGOR REINSTATEMENT
*     (24 CFR 203.552 (a)(9)).  When a mortgage is referred to
      foreclosure and is later reinstated, and where bankruptcy
      related services occur, mortgagees can collect fees from
      the mortgagor in accordance with the Federal National
      Mortgage Association (FNMA) Schedule of Standard Attorney's
      and Trustee's Fees in effect on the date the legal action
      is instituted.  The Department considers the FNMA fee
      schedules to be reasonable and customary.
*

        A.Legal fees may be collected from the mortgagor only when the
mortgagee has made its "decision to foreclose" and has instructed
the attorney to initiate legal action.

                NOTE:It is HUD's position that, if the attorney is required
to ask the mortgagee's permission to proceed further at
any stage of the foreclosure once the case is referred
to the attorney, the "decision to foreclose" has not
been made by the mortgagee.

Where the "decision to foreclose" has not been made, no
legal fee may be passed on to the mortgagor for any

work that was performed prior to the mortgagee making
its "decision to foreclose".

       B.The amount passed on to the mortgagor must be the "actual amount
incurred" by the mortgagee and must be in accordance with the
FNMA fee schedules.  In order to pass on this cost, neither the
attorney nor the trustee performing the service can be a salaried
member of the mortgagee's and/or servicer's staff.

       C.Mortgagees shall not charge mortgagors an administrative and/or
reinstatement fee in connection with the reinstatement of their
mortgage.

---

4-119/94

   4330.1 REV-5

---

      NOTE:Attorney and trustee fees associated with filing a claim for
insurance benefits when a mortgage is not reinstated are
discussed in Paragraph 9-5C.

4-9ANNUAL SERVICE CHARGES (24 CFR 203.23(c)).  For mortgages insured as
the result of an application submitted before July 17, 1961, with an
original principal amount of no more than $9,000, the mortgagee may
collect a monthly service charge of no more than one-half of one
percent per annum of the average unpaid principal balance if provided
for in the security instrument.

4-10TRUSTEE'S AND RECORDING FEES FOR SATISFACTIONS (24 CFR 203.552).

      A.Trustee's Fee (24 CFR 203.552(a)(11)).  If the security
instrument specifically provides for the payment of a trustee's
fee for the execution of a satisfaction, release or trustee's
deed when the debt is paid in full, the mortgagee may charge a
fee for that service.  However, the fee must be an amount that is
considered by the local HUD Field Office to be "reasonable and
customary" for that service in that area of the country.

      B.Recording Fee (24 CFR 203.552(a)(12)(iv)).  In those states where
a mortgagee is not required by law to record the satisfaction,
the mortgagee may charge a fee.  However, the fee must be one
that is considered by the local HUD Field Office to be
"reasonable and customary" for that service in that area of the
country.  (See Paragraph 4-12C for satisfactions required by
State law.)

4-11PROPERTY INSPECTIONS/PRESERVATION (24 CFR 203.377).  Mortgagees are
charged with the responsibility of taking reasonable action to protect
and preserve vacant and abandoned properties until foreclosure can be
completed and title conveyed to HUD in accordance with HUD
regulations.  In the event of reinstatement, the mortgagee may pass on
the costs of such action.

A.If A Mortgage Is Reinstated.  Costs of property inspections and/or preservation may be recovered from the mortgagor provided all of the following conditions are met:

     1.the mortgage is reinstated;

_____

9/944-12

4330.1 REV-5

_____

     2.the fee is not inconsistent with HUD's requirements;

     3.the fee is not inconsistent with state law;

     4.the fee is not inconsistent with the security instruments; and

     5.the costs are considered by the Regional Office to be reasonable and customary" for such services.

B.If A Claim Is Filed With HUD.  The mortgagee shall be reimbursed in accordance with HUD claims policies for costs of property inspections and/or preservation.  See Chapter 9, Paragraph 9-9A2.

4-12PROHIBITED FEES AND CHARGES (24 CFR 203.552(a)(12)).  There are some services a mortgagee may not charge the mortgagor.  These services are listed below:

Fees and Charges Specifically Prohibited by HUD Regulations (24 CFR 203.552(a)(12)).  Fees and charges listed below are prohibited:

A.Charges For Servicing Activities.  Mortgagees may not charge mortgagors for the cost of telephone calls, telegrams, personal visits with the mortgagor, or other activities that are normally considered a part of a prudent mortgagee's servicing activity.

B.Fees For Tax Services.  The mortgagee's use of an independent contractor such as a tax service to furnish tax data and information necessary to pay property taxes and in some circumstances to make the payments on behalf of the mortgagee.

C."Satisfaction", "Reconveyance", Or "Termination" Fees.  Except as provided for in Paragraph 4-10, no fee may be collected for:

     1.preparing and providing evidence of satisfaction, reconveyance or termination of the mortgage;

     2.providing information essential to the satisfaction, such as preparing a payoff statement; Although mortgagees may not charge for the payoff statement, if FAXing of the statement "is requested," a fee of $5 is permitted.  (See Paragraph 4-1C12)

_____

4-139/94

    4330.1 REV-5

_____

       3.recording the satisfaction of the mortgage in states where
recordation is the responsibility of the mortgagee.

    D.Attorney's Fees.  No charge may be made for any legal service
provided by an attorney who is a salaried member of the
mortgagee's and/or servicer's staff.

    E.Trustee's Fees.  No charge may be made for any service performed
by a trustee who is a salaried member of the mortgagee's and/or
servicer's staff.

    F.Fees Based On Fee Amount Or Unpaid Balance (24 CFR 203.552(b)).
No fee or charge shall be based on a percentage of either the
face amount of the mortgage or the unpaid principal balance due
on the mortgage.

4-13OTHER FEES AND CHARGES (24 CFR 203.552(12)).  The local HUD Office or
Headquarters may be asked to rule on any fee or charge or unusual
service not specifically mentioned in this Handbook.  The
determination will be based on what is reasonable and customary in the
area.

_____