1
2
3
4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6
7

AMYE ELBERT,

Case No.  20-cv-00250-MMC

8

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE**

9

v.

10

ROUNDPOINT MORTGAGE
SERVICING CORPORATION,

11

Defendant.

Re: Doc. No. 24

12
13

Before the Court is defendant RoundPoint Mortgage Servicing Corporation's

14

("RoundPoint") "Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion to

15

Strike Class Allegations," filed March 6, 2020.  Plaintiff Amye Elbert ("Elbert") has filed

16

opposition, to which RoundPoint has replied.  Having read and considered the papers

17

filed in support of and in opposition to the motion,[1] the Court hereby rules as follows.[2]

18

**BACKGROUND**

19

Elbert alleges that, in 2015, she purchased a home in Antioch, California, through

20

a loan secured by a Deed of Trust "issued by an FHA-approved lender and insured by

21

the FHA [Federal Housing Administration]."  (See Compl. ¶¶ 28, 31, Ex. A.)  Elbert further

22

alleges she "sometimes makes mortgage payments over the phone," and that, on those

23

occasions, RoundPoint, the loan servicer, charges her a fee.  (See Compl. ¶¶ 28-29.)  As

24

"example[s]," Elbert states that, on August 5, 2019, and again on September 4, 2019,

25

_____

26

[1] After briefing was complete, Elbert, on May 20, 2020, filed a request for leave to file a statement of recent decision, which request is hereby GRANTED.  See Civil L.R. 7-3(d)(2).

27

28

[2] By order filed May 8, 2020, the Court took the matter under submission.

1   RoundPoint "charged" her a $12.00 "Pay-to-Pay Fee" for "making a payment over the

2   phone,"[3] which fees, according to Elbert, were "not authorized" under the terms of the

3   Deed of Trust.  (See Compl. ¶ 30.)

4         Based on the above allegations, Elbert asserts, on her own behalf and on behalf of

5   a putative class, three Counts under state law, specifically, a claim for breach of contract,

6   a claim under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and a

7   claim under California's Unfair Competition Law ("UCL").

8   **DISCUSSION**

9         In its motion, RoundPoint argues each Count asserted by Elbert is subject to

10   dismissal for failure to state claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

11   Procedure, and, in the alternative, that certain portions of the complaint should be

12   stricken, pursuant to Rule 12(f) and Rule 23(d)(1)(D).

13   **A.  Rule 12(b)(6)**

14         The Court considers the three Counts, in turn

15       **1.  Count I – Breach of Contract**

16         In Count I, Elbert alleges RoundPoint breached the terms of the Deed of Trust by

17   charging her Pay-to-Pay fees.  RoundPoint argues Elbert has failed to identify any

18   provision in the Deed of Trust precluding it from charging such fees.  As set forth below,

19   the Court disagrees.

20         The Deed of Trust, in a section titled "Loan Charges," states as follows:  "Lender

21   may collect fees and charges authorized by the Secretary[;][4] [l]ender may not charge fees

22   that are expressly prohibited by this Security Instrument, or by Applicable Law."  (See

23

24        [3] Elbert states RoundPoint charges a $12.00 fee when a mortgagor paying by
telephone does so "with representative assistance," which the Court understands to
25   mean a live operator, and charges $10.00 when the mortgagor does so "by Interactive
Voice Response ('IVR')," which the Court understands to mean by an automated system.
26   (See Compl. ¶ 26.)

27        [4] The "Secretary" is the Secretary of the Department of Housing and Urban
Development ("HUD").  (See Compl. Ex. A ¶ R.)  The FHA, the agency that insured
28   Elbert's mortgage, is an agency within HUD.  See 12 U.S.C. § 1708.

United States District Court
Northern District of California

1    Compl. Ex. A ¶ 13.)  "Applicable Law" is defined in the Deed of Trust as, <u>inter</u> <u>alia</u>, "all

2    controlling applicable federal . . .  regulations."  (<u>See</u> Compl. Ex. A ¶ (J).)

3         One such federal regulation, 24 C.F.R. § 203.552, sets forth the types of fees a

4    lender may collect from a mortgagor, where the mortgage is insured by the FHA.  The

5    regulation begins with the following language:  "The mortgagee may collect reasonable

6    fees and customary fees from the mortgagor after insurance endorsement <u>only</u> as

7    provided below."  <u>See</u> 24 C.F.R. § 203.552(a) (emphasis added).  The regulation then

8    lists, in subsections (a)(1) – (a)(11) and (a)(13) – (a)(14), a number of specified fees a

9    lender may charge, none of which is the type of fee RoundPoint allegedly charged Elbert.

10   The remaining subsection, specifically, (a)(12), allows a lender to charge "[s]uch other

11   reasonable and customary charges as may be authorized by the Secretary," <u>see</u> 24

12   C.F.R. § 203.552(a)(12), and Elbert alleges the Secretary has not authorized fees of the

13   type challenged here (<u>see</u> Compl. ¶ 36).[5]  Consequently, Elbert has alleged sufficient

14   facts to support a finding that RoundPoint, by charging her a fee not authorized by the

15   Secretary, violated the "Loan Charges" section in the Deed of Trust.

16        RoundPoint, citing <u>Loiseau v. Visa USA Inc.</u>, 2010 WL 4542896 (S.D. Cal. 2010),

17   next argues Elbert, having been given notice of the Pay-to-Pay fees, fails to show she

18   incurred damages as a result of RoundPoint's imposition of such charges.  In <u>Loiseau</u>,

19   the plaintiff brought a breach of contract claim based on bank charges imposed to use a

20   gift card, which claim was dismissed for the reason that the charges had been disclosed

21   on the card's packaging.  <u>See id.</u> at *2.  Implicit in the holding in <u>Loiseau</u>, however, is a

22   finding that the charges imposed were allowed under the terms of the contract, whereas,

23   in the instant case, Elbert, as set forth above, has alleged sufficient facts to support a

24   finding that the Pay-to-Pay fees she was charged are not allowed under the terms of the

25

26   _____

27        [5] Subsection (a)(12) also states authorized charges "shall not include," <u>inter</u> <u>alia</u>,
     "[c]harges for servicing activities of the mortgagee or servicer."  <u>See</u> 24 C.F.R.
     § 203.552(a)(12).  As Elbert does not argue the Pay-to-Pay fees constitute a servicing
28   activity, the Court does not address such exclusion further herein.

United States District Court
Northern District of California

1   contract.

2        Accordingly, Count I is not subject to dismissal.

3        **2.  Count 2 – Rosenthal Act**

4        In Count II, Elbert asserts RoundPoint has violated the Rosenthal Act, which Act

5   provides that "[n]o debt collector shall collect or attempt to collect a consumer debt by

6   means of [various specified] practices."  <u>See</u> Cal. Civ. Code § 1788.13; <u>see also</u> Cal. Civ.

7   Code § 1788.14 (same).

8        Elbert alleges RoundPoint, by assessing a Pay-to-Pay fee when she makes a

9   mortgage payment by phone, engages in two practices prohibited under the Act:

10  (1) making a "false representation that the consumer debt may be increased by . . .

11  service fees . . . or other charges if, in fact, such fees or charges may not legally be

12  added to the existing obligation," <u>see</u> Cal. Civ. Code § 1788.13(e); and (2) "charg[ing] for

13  services rendered, or other expense incurred by the debt collector in the collection of the

14  consumer debt," where such charge is not "permitted by law," <u>see</u> Cal. Civ. Code

15  § 1788.14(b).[6]

16       For purposes of the Rosenthal Act, a "consumer debt," which includes a

17  "mortgage debt," is "money . . . due or owing or alleged to be due or owing."  <u>See</u> Cal.

18  Civ. Code § 1788.2(f).[7]  RoundPoint argues Elbert's claim is subject to dismissal

19  because, RoundPoint asserts, Elbert has not alleged any mortgage payment she made

20  by telephone was, at the time of such payment, due or owing.  <u>See</u> <u>Burris v. HSBC Bank,</u>

21  <u>USA, Nat'l Ass'n</u>, 2014 WL 12772260, at *5-6 (C.D. Cal. December 19, 2014) (dismissing

22

23       [6] The "law" that Elbert cites for purposes of this claim is 15 U.S.C. § 1692f(1) (<u>see</u>
24  SAC ¶ 78), a section of the Fair Debt Collection Practices Act that precludes the
    "collection of any amount . . . unless such amount is expressly authorized by the
25  agreement creating the debt."  <u>See</u> 15 U.S.C. § 1692f(1).

26       [7] In another subsection of the above-cited statute, the reference is to consumer
    debt that is "due <u>and</u> owing or alleged to be due <u>and</u> owing."  <u>See</u> Cal. Civ. Code
27  § 1788.2(h) (emphasis added).  The California Attorney General "do[es] not distinguish
    between the two phrases" and construes both to mean "delinquent, making them subject
28  to collection."  <u>See</u> 85 Cal. Op. Att'y Gen. 215, at *2 and n.3 (2002).

4

1   Rosenthal Act claim where payment on which claim based was made before "due date

2   listed on the statement").[8]

3       In her opposition, Elbert cites to <u>Sanders v. LoanCare LLC</u>, 2019 WL 441964

4   (C.D. Cal. February 1, 2019), in which the plaintiff alleged she made a payment within a

5   "grace period," which payment, the district court held, was made when it was, for

6   purposes of the Rosenthal Act, "due and owing." <u>See</u> id. at *3.  Even assuming a

7   payment within a grace period can be considered "due and owing," however, Elbert has

8   not identified any relevant document providing for a grace period, let alone that she made

9   any telephonic payment within any such period.[9]

10      Accordingly, Count II is subject to dismissal.

11      **3. Count III – UCL**

12      In Count III, Elbert alleges defendant has violated § 17200 of the California

13  Business & Professions Code, which section prohibits "any unlawful, unfair or fraudulent

14  business act or practice." <u>See</u> Cal. Bus. & Prof. § 17200.  Specifically, Elbert alleges,

15  RoundPoint's Pay-to-Pay fees are "unlawful" and "unfair." (<u>See</u> Compl. ¶¶ 89-90.)

16      To the extent Count III is based on the allegation that the collection of Pay-to-Pay

17  fees is unlawful, the claim, as pleaded, is wholly derivative of the Rosenthal Act (<u>see</u>

18  Compl. ¶¶ 87-88), and, consequently, is subject to dismissal for the reasons stated above

19  with respect to Count II.

20      To the extent Count III is based on the allegation that the collection of Pay-to-Pay

21  fees is unfair, RoundPoint argues the claim is conclusory, and the Court agrees.  For

22

23  ————————————

24      [8] To the extent RoundPoint argues mortgages are not covered by the Rosenthal
    Act, and to the extent Elbert argues a mortgage is covered even where a payment is not
    due or owing, the Court finds such arguments are without merit in light of the plain
25  language of § 1788.2(f).

26      [9] Elbert relies on her allegation that, "on August 5, 2019, and again [on]
    September 4, 2019, RoundPoint charged . . . Elbert a $12.00 Pay-to-Pay Fee for making
27  a payment over the phone." (<u>See</u> SAC ¶ 8.)  Elbert fails, however, to explain the
    significance of such dates with regard to whether the payments she made by phone were
28  due and owing.

United States District Court
Northern District of California

1    purposes of § 17200, an unfair practice is one that "violates public policy or . . . is

2    immoral, unethical, oppressive or unscrupulous and causes injury to consumers which

3    outweighs its benefits."  See McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457,

4    1473 (2006) (citing cases).  Here, Elbert has not identified a public policy implicated by

5    Pay-to-Pay fees, nor has she pleaded facts sufficient to show the collection of such fees

6    is "immoral, unethical, oppressive or unscrupulous."  See id.  Although she alleges the

7    fees charged are "well above the actual cost of providing phone payments service" (see

8    Compl. ¶ 90), she includes insufficient facts to support such allegation.

9          Accordingly, Count III is subject to dismissal.

10   **B. Rule 12(f)**

11         "The court may strike from a pleading . . . any redundant, immaterial, impertinent,

12   or scandalous matter."  Fed. R. Civ. P. 12(f).  RoundPoint contends the first three

13   numbered paragraphs of the complaint should be stricken, on the ground those

14   paragraphs are "vague and inflammatory" and "are irrelevant to [Elbert's] experiences

15   and claims."  (See Def.'s Mot. at 15:21-25.)  As Elbert points out, however, the

16   allegations therein are limited to and summarize the claims Elbert is making.

17         Accordingly, the first three numbered paragraphs will not be stricken.

18   **C. Rule 23(d)(1)(D)**

19         RoundPoint next argues the putative class allegations should be stricken pursuant

20   to Rule 23(d), under which Rule a court may issue orders that "require that the pleadings

21   be amended to eliminate allegations about representation of absent persons."  See Fed.

22   R. Civ. P. 23(d)(1)(D).  In that regard, RoundPoint is, in essence, contending Elbert

23   cannot show "there are questions of law or fact common to the [putative] class" or that

24   her "claims or defenses . . . are typical of the claims or defenses of the [putative] class."

25   See Fed. R. Civ. P. 23(a) (setting forth requirements for class action).

26         District courts have authority to strike class allegations at the pleading stage where

27   the class as defined cannot be certified.  See, e.g., Kamm v. California City Development

28   Co., 509 F.2d 205, 207 n.3, 212-13 (9th Cir. 1975) (affirming order striking class

United States District Court
Northern District of California

United States District Court
Northern District of California

1   allegations where plaintiff would be unable to meet requirements of Rule 23).  Although,

2   as Elbert points out, a motion to strike class allegations is "rare[ly]" granted, see Kazemi

3   v. Payless Shoesource, Inc., 2010 WL 963225, at *3 (N.D. Cal. March 16, 2010), the

4   Court finds the instant case is one of the "rare case[s]" in which the complaint "indicate[s]

5   that the class requirements cannot possibly be met," see id.

6          In particular, Elbert's theory in support of class certification is that RoundPoint's

7   imposition of a fee when a mortgagor makes a payment by phone is contrary to "uniform

8   covenants" found in mortgages "insured by the FHA."  (See Compl. ¶¶ 2, 32, 36; see also

9   Compl. ¶¶ 1, 3, 35, 41, 51.)  The putative class, however, is defined as "[a]ll persons with

10  a California address who were borrowers on residential mortgage loans to which

11  RoundPoint acquired servicing rights, and paid a fee to RoundPoint for making a loan

12  payment by telephone, IVR, or the internet, during the [class period]."  (See Compl. ¶ 44.)

13  In other words, the class consists of all borrowers whose loans were serviced by

14  RoundPoint, irrespective of whether those loans were insured by the FHA, and Elbert

15  does not allege RoundPoint only services loans insured by the FHA.  Moreover, although

16  the class definition includes persons who made payments by "the internet" (see id.),

17  nothing in the complaint suggests RoundPoint charges a fee to persons who make

18  payments in that manner.  See Wal-Mart Stores v. Duke, 564 U.S. 338, 350 (2011)

19  (holding "common contention," for purpose of Rule 23, exists only where "determination

20  of its truth or falsity will resolve an issue that is central to the validity of each one of the

21  claims in one stroke"; further holding "commonality requires the plaintiff to demonstrate

22  that the class members have the same injury").

23          Accordingly, the class allegations will be stricken.

24                                       **CONCLUSION**

25          For the reasons stated, RoundPoint's motion is hereby GRANTED in part and

26  DENIED in part, as follows:

27          1. To the extent RoundPoint seeks dismissal of Counts II and III, the motion is

28  GRANTED.

1    2.  To the extent RoundPoint seeks an order striking the class allegations, the

2  motion is GRANTED.

3    3.  In all other respects, the motion is DENIED.

4    If Elbert wishes to amend for purposes of curing any or all of the deficiencies

5  identified above, she shall file her First Amended Complaint no later than September 10,

6  2020.

7    In light of the above, the Case Management Conference is hereby CONTINUED

8  from September 4, 2020, to December 4, 2020, at 10:30 a.m.  A Joint Case Management

9  Statement shall be filed no later than November 27, 2020.

10    **IT IS SO ORDERED.**

11

12  Dated: August 19, 2020

13    MAXINE M. CHESNEY
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

8