IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>　　　　Defendant. | Case No. 20-cv-00250-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COUNTS II AND III AND STRIKE CLASS ALLEGATIONS**<br><br>Re: Doc. No. 45 |

Before the Court is defendant RoundPoint Mortgage Servicing Corporation's ("RoundPoint") "Motion to Dismiss Counts II and III of Plaintiff's First Amended Complaint and Motion to Strike Class Allegations," filed September 24, 2020.  Plaintiff Amye Elbert ("Elbert") has filed opposition, to which RoundPoint has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Elbert alleges that, in 2015, she purchased a home in Antioch, California, "through a loan" (hereinafter, "Note") "secured by a mortgage on the property" (hereinafter, "Deed of Trust").  (See First Amended Complaint ("FAC") ¶¶ 51-52, Exs. A-B.)  Pursuant to the Note, Elbert is required to make a "monthly payment" of $2044.55 "on the 1st day of each month."  (See FAC Ex. B ¶ 3.)  The Note also provides:  "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."  (See FAC Ex. B ¶ 6(B).)

//

---

[1] By order filed October 26, 2020, the Court took the matter under submission.

Elbert alleges she "sometimes makes mortgage payments over the phone," and that, on those occasions, RoundPoint, the loan servicer, "charges her a fee" (see FAC ¶ 55), "[f]or example," on November 1, 2018, May 3, 2019, August 5, 2019, and September 4, 2019, a "$12.00 Pay-to-Pay Fee for making a payment over the phone" (see FAC ¶¶ 56-57). Elbert further alleges that, on each of the above-referenced four dates, the payment she made over the phone was "applied" to a monthly payment that was "at least 30 days past due" (see id.), and that Pay-to-Pay Fees are neither "permitted" by her "mortgage agreement[ ]" (see FAC. ¶ 5), nor "authorized in the HUD Servicing Policy" Elbert states is applicable to her mortgage (see FAC ¶¶ 43, 61-63).

Based on the above allegations, Elbert asserts, on her own behalf and on behalf of a putative class, four Counts under state law, specifically, (1) a claim for breach of contract, (2) a claim under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), §§ 1788–1788.33 of the California Civil Code (3) a claim under the Unfair Competition Law ("UCL"), § 17200 of the California Business & Professions Code, based on RoundPoint's alleged violations of the Rosenthal Act and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and (4) a claim under the UCL, based on RoundPoint's alleged failure to comply with the HUD Servicing Policy.

**DISCUSSION**

In its motion, RoundPoint argues Counts II and III are subject to dismissal for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that the class action allegations applicable to all Counts should be stricken, pursuant to Rule 23(d)(1)(D).

**A. Rule 12(b)(6)**

The Court considers the two challenged Counts in turn.[2]

---

[2] RoundPoint does not seek dismissal of Count I, by which Elbert alleges RoundPoint breached the terms of "the Mortgage Agreement" by charging "Pay-to-Pay Fees" (see FAC ¶¶ 86, 102), nor does it seek dismissal of Count IV, by which Elbert alleges a violation of the UCL based on RoundPoint's having charged her "Pay-to-Pay Fees" not authorized by "the HUD Servicing Policy" (see FAC ¶¶ 146-47).

### 1. Count II – Rosenthal Act

In Count II, Elbert asserts RoundPoint violated the Rosenthal Act, which provides that "[n]o debt collector shall collect or attempt to collect a consumer debt by means of [specified] practices." See Cal. Civ. Code § 1788.13; see also Cal. Civ. Code § 1788.14 (same). A "debt," for purposes of the Rosenthal Act, "means money, property, or their equivalent, that is due or owing or alleged to be due or owning from a natural person to another person." See Cal. Civ. Code § 1788.2(d).

Elbert alleges RoundPoint, by charging her a fee when she made mortgage payments by phone, engaged in three practices prohibited by the Rosenthal Act: (1) engaging in "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," see 15 U.S.C. § 1692f(1); see also Cal. Civ. Code § 1788.17 (providing violations of the FDCPA constitute violations of the Rosenthal Act); (2) making a "false representation that the consumer debt may be increased by . . . service fees . . . or other charges if, in fact, such fees or charges may not legally be added to the existing obligation," see Cal. Civ. Code § 1788.13(e); and (3) "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law," see Cal. Civ. Code § 1788.14(b).

#### a. Statute of Limitations

A claim under the Rosenthal Act is subject to a one-year statute of limitations. See Cal. Civ. Code § 1788.30(f) (providing claim "may be brought in any appropriate court . . . within one year from the date of the occurrence of the violation").

RoundPoint argues that, to the extent Count II is based on Elbert's allegation that RoundPoint charged her a "$12 Pay-to-Pay Fee" on November 1, 2018 (see FAC ¶ 57), the claim is time-barred, as Elbert's initial complaint was filed January 13, 2020. Elbert has not disputed or otherwise addressed RoundPoint's argument in her opposition.

3

Accordingly, to the extent Count II is based on RoundPoint's having allegedly charged Elbert a fee on November 1, 2018, the claim is subject to dismissal.

### b. Alleged Violation of § 1788.17

As noted, a violation of the FDCPA constitutes a violation of the Rosenthal Act as well. See Cal. Civ. Code § 1788.17. In this instance, Elbert, as also noted, bases her Rosenthal Act claim in part on a provision of the FDCPA that prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." See 15 U.S.C. § 1692f(1).

RoundPoint, relying on Turner v. Ocwen Loan Servicing, LLC, 467 F. Supp. 3d 1244, 2020 WL 2517927 (M.D. Fla. 2020), argues "fees paid in connection with a phone payment do not constitute consumer debts under the FDCPA and similar statutes." (See Def.'s Mot. at 7:14-15.) As Elbert points out, however, Turner is distinguishable on its facts. In particular, the plaintiff in Turner claimed the fee she was charged to make a mortgage payment by phone was itself a "debt" for purposes of the FDCPA, and the district court, in finding the plaintiff failed to state a claim, noted that the fee was owed to the mortgage servicer, not the creditor, and, in any event, that the plaintiff was not in default on her obligation to pay the fee at the time she paid it. See Turner, 467 F. Supp. 3d at 1247-48 (holding "a person or business is not a 'debt collector' if the debt sought to be collected is not due or owed to another (i.e., it originated with the person or business collecting it) or if the debt[or] was not in default"). Here, by contrast, to the extent Count II is based on a violation of the FDCPA, such claim is not brought under the theory that the fee itself constitutes a debt, but, rather, that RoundPoint, in collecting an overdue mortgage payment, charged a fee that was incidental to said debt. (See FAC ¶ 57, Ex. B ¶¶ 3(A), 6(B).)

//
//
//

In its reply, RoundPoint argues, for the first time, the fees it allegedly charged Elbert were not "incidental to the principal obligation" within the meaning of § 1692f(1).[3] Although there exists a split of authority among district courts as to whether such fees can be deemed incidental to a late mortgage payment, the Court, having reviewed those cases, finds more persuasive the reasoning of the decisions in which such fees were deemed incidental.  See, e.g., Lembeck v. Arvest Central Mortgage Co., 2020 WL 6440502, at *1 (N.D. Cal. November 3, 2020) (finding "there would be no reason to pay the fee but for the need to pay the principal obligation"; further finding "[t]he fact that there are other payment methods not involving a fee or the fact that it's a method the borrower has selected does nothing to take the fee outside the plain language of the statute"); Fusco v. Ocwen Loan Servicing, LLC, 2020 WL 2519978, at *2 (S.D. Fla. March 2, 2020) (citing Black's Law Dictionary definition of "incident" as "a dependent, subordinate, or consequential part"; finding "Speedpay fees" charged when borrower paid mortgage by phone "fit[ ] within" definition; noting such fees "are dependent on the payment of [the plaintiff's] debt [and] there could be no Speedpay fee without a payment to make more 'speedy'").

Accordingly, to the extent Count II is based on an alleged violation of § 1788.17 and on fees charged on dates other than November 1, 2018, Count II is not subject to dismissal.

**c. Alleged Violations of § 1788.13(e) and § 1788.14(b)**

As noted, the Rosenthal Act claim here is also based on alleged violations of § 1788.13(e) and § 1788.14(b).  RoundPoint makes no argument specific to either of these alleged statutory violations, and to the extent it relies on its argument that fees charged to make a monthly payment by phone are not debts, such argument is, for the reasons stated above, unpersuasive, as Elbert is not proceeding under a theory that the

---

[3] Although the Court ordinarily would not consider a legal argument raised for the first time in a reply, in this instance Elbert, apparently anticipating the argument, addressed the issue in her opposition.

1 fees are debts.

2 Accordingly, to the extent Count II is based on alleged violations of § 1788.13(e) 3 and § 1788.14(b) and on fees charged on dates other than November 1, 2018, Count II is 4 not subject to dismissal.

### 2. Count III – UCL

In Count III, Elbert asserts RoundPoint violated the UCL, which section prohibits "any unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. § 17200. Specifically, Elbert alleges, the fees for making mortgage payments by phone on dates when she was in default on her obligation to make such mortgage payments were imposed in violation of the Rosenthal Act and the FDCPA, and, consequently, were "unlawful." (See FAC ¶ 125.)

To the extent Count III is based on alleged violations of the Rosenthal Act (see FAC ¶¶ 129-33, 138), RoundPoint argues the claim is subject to dismissal for the same reasons her Rosenthal Act claim, namely Count II, is subject to dismissal. As set forth above, however, Count II is only subject to dismissal to the extent it is based on the fee charged on November 1, 2018. Moreover, unlike the one-year statute of limitations applicable to Rosenthal Act claims, the statute of limitations for a claim under § 17200 is four years. See Cal. Bus. & Prof. Code § 17208; Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79 (2000) (holding, even if borrowed statute has shorter statute of limitations, "[a]ny action on any UCL cause of action is subject to the four-year period of limitations created by that section").

To the extent Count III is based on alleged violations of the FDCPA, specifically, § 1692f(1), RoundPoint again argues Elbert has failed to allege facts to support a finding that the "Pay-to-Pay Fees" are "debts" within the meaning of the FDCPA. As discussed above, however, Elbert is not proceeding under a theory that those fees are debts.

Accordingly, Count III is not subject to dismissal.

//

//

**B. Rule 23(d)(1)(D)**

RoundPoint argues the putative class allegations should be stricken pursuant to Rule 23(d), under which a court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons." See Fed. R. Civ. P. 23(d)(1)(D). In that regard, RoundPoint in essence contends Elbert cannot show "there are questions of law or fact common to the [putative] class" or that her "claims or defenses . . . are typical of the claims or defenses of the [putative] class." See Fed. R. Civ. P. 23(a) (setting forth requirements for class action).

District courts have authority to strike class allegations at the pleading stage where the class as defined cannot be certified. See, e.g., Kamm v. California City Development Co., 509 F.2d 205, 207 n.3, 212-13 (9th Cir. 1975) (affirming order striking class allegations where plaintiff would be unable to meet requirements of Rule 23).

Here, Elbert seeks to proceed "on behalf of the following classes and subclasses":

> California Class: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by RoundPoint, (3) with deeds of trust incorporating standard uniform covenants from Fannie Mae/ Freddie Mac, FHA or similar government-backed model mortgages, (4) and who paid a fee to RoundPoint for making a loan payment by telephone, during the applicable statutes of limitations through the date a class is certified.
>
> Rosenthal Subclass: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by RoundPoint, (3) with deeds of trust incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, (4) who paid a fee to RoundPoint for making a loan payment by telephone, (5) in connection with a payment made after the due date, during the applicable statutes of limitations through the date a class is certified.
>
> FHA Subclass: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by RoundPoint, (3) with deeds of trust incorporating standard uniform covenants from FHA model mortgages, (4) and who paid a fee to RoundPoint for making a loan payment by telephone, during the applicable statutes of limitations through the date a class is certified.

(See FAC ¶ 73.)

RoundPoint argues the above-referenced classes/subclasses, or certain of them, cannot, for three reasons, be certified as alleged. As set forth below, the Court finds the

7

arguments made by RoundPoint are, at best, premature at the pleading stage.

### a. Contractual Language

Elbert's definitions of the California Class and Rosenthal Subclass include persons "with deeds of trust incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages." (See FAC ¶ 73.) RoundPoint first argues the FAC does not set forth the "specific language of the 'standard uniform covenants'" contained in the putative class members' respective deeds of trust, and, consequently, Elbert has "not established" the referenced covenants are "identical." (See Def.'s Mot. at 11:14-16, 24-26.)

Even assuming Elbert would be required to allege each class member's contract contains language "identical" to the contractual provisions on which she relies, the Court finds she has sufficiently done so. In particular, Elbert alleges her Deed of Trust contains a provision stating "Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law" (see FAC ¶ 66, Ex. A ¶ 13),[4] and she further alleges such language is a "standard provision[ ]" in "other Uniform Mortgages backed by government agencies" (see FAC ¶¶ 66, 98).[5]

### b. Choice of Law

Elbert's definition of each class/subclass includes persons "with a residential mortgage loan securing a property in California." (See FAC ¶ 73.) RoundPoint, noting Elbert seeks relief solely under California law, next argues the class definitions are "overbroad" (see Def.'s Mot. at 12:1-16) because, according to RoundPoint, the claims of

---

[4] In an order denying in part RoundPoint's motion to dismiss the initial complaint, the Court found Elbert had sufficiently alleged RoundPoint's imposition of fees to make mortgage payments by phone was in violation of "Applicable Law," namely, 24 C.F.R. § 203.552. (See Order, filed August 19, 2020, at 2:16 - 3:15.)

[5] Elbert defines "Uniform Mortgages" as "model mortgage documents of Fannie Mae/Freddie Mac, the Federal Housing Administration ('FHA') and other governmental agencies." (See FAC ¶ 2.) The Court understands the phrase "deeds of trust incorporating standard uniform covenants" as used in the class definitions (see FAC ¶ 73) to mean "deeds of trust incorporating standard uniform covenants" contained in the "model mortgage documents" of the above-referenced governmental agencies.

8

1 class members who own property in California but live outside the state would be subject
2 to laws of states other than California.  In response, Elbert relies primarily on a section in
3 her Deed of Trust that provides such agreement "shall be governed by federal law and
4 the law of the jurisdiction in which the Property is located" (see FAC ¶ 66, Ex. A ¶ 15), a
5 provision she contends is found in the deeds of trust of all putative class members.[6]

Elbert, as the proponent of such choice-of-law provision, has the burden of establishing its enforceability and that her claims and those of the putative class fall within its scope.  See Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906, 916-17 (2001) (setting forth showing proponent must make).[7]  RoundPoint fails, however, to point to any allegation in the FAC, or to any judicially noticeable material, that would demonstrate Elbert's inability to meet that burden.

Moreover, to the extent Elbert ultimately fails to show the provision is enforceable or that her claims fall within its scope, California law nonetheless would apply unless RoundPoint were to show the law of another state is applicable.  See id. at 919 (setting forth, as to cases in which no choice-of-law provision governs, requisite showing to be made by proponent of foreign law).  RoundPoint has not endeavored to make such a showing at this time.

**c. Default**

RoundPoint further argues Elbert cannot obtain certification of the Rosenthal Subclass, because, according to RoundPoint, the definition "includes persons who were not in default when they made payments by phone" (see Def.'s Mot. at 13:27), and, consequently, includes persons not entitled to relief under the Rosenthal Act.

---

[6] Elbert alternatively argues the Court should assume at the pleading stage that all putative members are, or were at the time they entered into their respective deeds of trust, California residents.  The FAC. however, includes no facts from which such an inference reasonably can be drawn.

[7] RoundPoint does not, at least for purposes of the instant motion, disagree with Elbert's assertion that all putative class members' deeds of trust contain the same choice-of-law provision as the provision set forth in Elbert's Deed of Ttrust.

9

1  The Rosenthal Subclass is defined, in relevant part, as persons "who paid a fee to
2  RoundPoint for making a loan payment by telephone . . . in connection with a payment
3  made after the due date." (See FAC ¶ 73.) On its face, such definition appears to limit
4  the class to persons who were charged a fee to make a payment that was "due."[8]

5  RoundPoint, in arguing the class definition nonetheless is flawed, asserts the
6  definition encompasses persons who made a mortgage payment "during an applicable
7  grace period" (see Def.'s Mot. at 13:12), thus suggesting a mortgage payment is not "due
8  or owing," for purposes of the Rosenthal Act, if paid during such period. As Elbert points
9  out, however, her Note provides she must make a monthly payment on the "1st day of
10 each month" (see FAC Ex. B ¶ 3(A), and that, if she does not "pay the full amount of
11 each monthly payment on the date it is due, [she] will be in default" (see FAC Ex. B
12 ¶ 6(B)).[9] Although the Note does include a grace period, in that it states Elbert "will pay a
13 late charge" if she fails to make a monthly payment "by the end of 15 calendar days after
14 the date it is due" (see FAC Ex. B ¶ 6(A)), nothing in the Note indicates a payment made
15 after the first of the month but within the following fifteen days is not "due or owing." See
16 Cal Civ. Code § 1788.2(d). Indeed, as noted, the grace period provision itself refers to
17 any payment made after the first of the month as being "due." (See FAC Ex. B ¶ 6(B).)

18 Lastly, RoundPoint argues the class definition could include persons who made a
19 payment "in a different amount tha[n] what is owed." (See Def.'s Mot. at 13:12-13.)
20 RoundPoint fails to explain, however, how any such, assumedly partial, payment would
21 preclude a mortgagor from seeking relief under the Rosenthal Act, and particularly given
22 the Note's provision that a mortgagor who fails to pay "the full amount" when due "will be

---

[8] As noted, the Rosenthal Act prohibits "debt collectors" from engaging in certain practices in connection with collecting a "debt," which, in turn, is defined as "money, property, or their equivalent, that is due or owing or alleged to be due or owning from a natural person to another person." See Cal. Civ. Code §§ 1788.13, 1788.14, 1788.2(d).

[9] In their respective filings in support of and in opposition to the motion, both parties appear to assume the provisions cited by Elbert in response to the above argument are also included in the putative class members' loans.

in default."  (See FAC Ex. B ¶ 6(B).)

**CONCLUSION**

For the reasons stated, RoundPoint's motion is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent Count II is based on the fee Elbert allegedly was charged on November 1, 2018, Count II is hereby DISMISSED.

2. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 25, 2020

MAXINE M. CHESNEY
United States District Judge