Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202-463-2101
Facsimile: 202-463-2103
jkauffman@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ROUNDPOINT MORTGAGE SERVICING CORPORATION, <br><br> Defendant. | Case No. 3:20-cv-00250-MMC <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS** <br><br> **Date**: October 29, 2021 <br> **Time**: 9:00 a.m. <br> **Courtroom:** 7, 19th Floor <br><br> **Judge**: Hon. Maxine M. Chesney <br> **Complaint Filed**: January 13, 2020 <br> **Trial Date**: None Set |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **October 29, 2021, at 9:00 a.m.**, or as soon thereafter as this matter may be heard, in Courtroom 7, before the Honorable Maxine Chesney, Plaintiff Amye Elbert respectfully moves this court to preliminarily approve the Settlement reached in this case, the terms of which are more specifically described in the Memorandum and Points of Authority filed in support of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Hassan A Zavareei and James L. Kauffman and exhibits thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant RoundPoint Mortgage Servicing Corporation does not oppose this motion.

Dated: October 1, 2021                                  Respectfully submitted,


*/s/ Kristen G. Simplicio*
Kristen G. Simplicio (SBN 263291)                      Todd Walburg (SBN 213063)
Hassan A. Zavareei (SBN 181547)                        BAILEY & GLASSER LLP
TYCKO & ZAVAREEI LLP                                    1999 Harrison St., Suite 660
1828 L Street NW, Suite 1000                           Oakland, CA 94612
Washington, D.C. 20036                                  Telephone: (510) 207-8633
Telephone: 202-973-0900                                Facsimile: (510) 463-0291
Facsimile: 202-973-0950                                twalburg@baileyglasser.com
ksimplicio@tzlegal.com
hzavareei@tzlegal.com                                  James L. Kauffman (admitted *pro hac vice*)
                                                       BAILEY & GLASSER LLP
                                                       1055 Thomas Jefferson Street, NW
                                                       Washington, D.C. 20007
                                                       Telephone: (202) 463-2101
                                                       Facsimile: (202) 463-2103
                                                       jkauffman@baileyglasser.com

                                                       *Attorneys for Plaintiff*

Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202-463-2101
Facsimile: 202-463-2103
jkauffman@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all other similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>       Defendant. | Case No. 3:20-cv-00250-MMC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>**Date**: October 29, 2021<br>**Time**: 9:00 a.m.<br>**Courtroom:** 7, 19th Floor<br>**Judge**: Hon. Maxine M. Chesney<br><br>**Complaint Filed**: January 13, 2020<br>**Trial Date**: None Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 2

III.   THE SETTLEMENT AGREEMENT ....................................................................... 3

       A.    The Proposed Class .......................................................................................... 3

       B.    Benefits to the Settlement Class ...................................................................... 5

             1.    Monetary Benefits ................................................................................. 5

             2.    Injunctive Relief ................................................................................... 6

       C.    Settlement Administrator and Administration Costs ....................................... 7

       D.    Class Member Release ..................................................................................... 7

       E.    Proposed Plan of Notice .................................................................................. 7

       F.    Opt-Outs and Objections .................................................................................. 9

       G.    Attorneys' Fees and Costs and Service Award ............................................... 10

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL .................................... 11

V.     ARGUMENT ............................................................................................................ 12

       A.    The Settlement Agreement warrants preliminary approval. ........................... 12

             1.    The Settlement is the product of good-faith, informed, arms' length negotiations ... 13

             2.    The Settlement is fair, adequate, and reasonable. ................................. 14

                   a.    The Strengths and Risks of Plaintiff's Case ............................ 14

                   b.    The Risks, Complexity, and Likely Duration of Further Litigation ............... 15

                   c.    The Risk of Maintaining Class Action Status .......................... 16

                   d.    The Amount Offered in Settlement .......................................... 16

                   e.    The Allocation of the Settlement ............................................. 17

                   f.    The Extent of Discovery Completed and Stage of Proceedings .................. 18

                   g.    The Views of Class Counsel .................................................... 19

                   h.    Government Participant and Class Member Reaction ............... 19

             3.    The Class Representatives and Class Counsel have adequately represented the proposed class. ............................................................. 19

             4.    The proposed Fee and Expense Award is fair and reasonable. ............. 20

       B.    Certification of the Settlement Class is appropriate. ....................................... 21

             1.    The Settlement Class Meets the Requirements of Rule 23(a) ............... 21

             2.    The Settlement Class satisfies the requirements of Rule 23(b)(3) ........ 23

       C.    The Court should approve the proposed notice plan. ...................................... 24

             1.    The proposed notice plan is adequate and warrants preliminary approval. ......... 24

VI.    CONCLUSION ......................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
No. C-06-05248-MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)..............................13

*Avina v. Marriott Vacations Worldwide Corp.*,
No. SACV18685JVSJPRX, 2019 WL 8163642 (C.D. Cal. Oct. 25, 2019).................11, 19

*Behfarin v. Pruco Life Ins. Co.*,
No. CV 17-5290-MWF-FFMx, 2019 WL 7188575 (C.D. Cal. Nov. 26, 2019) ...............11

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015) ........................................................................................22

*Bravo v. Gale Triangle, Inc.*,
No. CV 16-03347 BRO (GJSx), 2017 WL 708766 (C.D. Cal. Feb. 16, 2017)................21

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ....................................................................2, 12, 13, 17

*Calderon v. Wolf Firm*,
No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ...........17

*Celano v. Marriott Int'l Inc.*,
242 F.R.D. 544 (N.D. Cal. 2007) ........................................................................................21

*Chester v. TJX Cos.*,
No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017)..............15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).....................................................................................11, 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1269 (9th Cir. 1992) .............................................................................................11

*Cohorst v. BRE Props.*,
No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 9, 2011)....................13

*Dennis v. Kellogg Co.*,
No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .......................15

*Eisen v. Carlisle and Jacquelin*,
417 U.S. 156 (1974) .............................................................................................................24

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...............................................................................................23

*Felix v. WM. Bolthouse Farms, Inc.*,
No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352 (E.D. Cal. May 4, 2020) ...............22

*Flores v. Collection Consultants of Cal.*,
No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015).......15

*Garcia v. Nationstar Mortgage, LLC*,
No. 2:15-cv-1808 (W.D. Wash.)..........................................................................................17

*Gonzalez-Tzita v. City of L.A.*,
No. CV 16-0194 FMO(Ex), 2019 WL 7790440 (C.D. Cal. Dec. 9, 2019)....................22

*Grimm v. American Eagle Airlines, Inc.*,
No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014).......16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................. 12, 22, 23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .................................................................................... 22

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .............................. 21

*Hickcox-Huffman v. U.S. Airways, Inc.*,
No. 10-cv-05193, 2019 WL 1571877 (N.D. Cal. April 11, 2019) ................................ 21

*Hillman v. Lexicon Consulting, Inc.*,
No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) ......... 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................. 11, 13

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .................. 21

*In re Mego Fin. Corp.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................................... 24

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .................................................................................. 11

*Kemp v. Wells Fargo Bank, N.A.*,
No. 17-cv-01259-MEJ, 2017 WL 4805567 (N.D. Cal. Oct. 15, 2017) ........................ 15

*Knutson v. Schwan's Home Serv., Inc.*,
No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. 2014) ......................... 25

*Lane v. Facebook, Inc.*,
696 F. 3d 811 (9th Cir. 2012) ................................................................................... 25

*Lish v. Amerihome Mortg. Co.*,
No. 220-CV_07147JFWJPRX, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020) ............. 15

*Lloyd v. Navy Federal Credit Union*,
No. 17-cv-1280-BAS-RBB, 2018 WL 2269958 (S.D. Cal. May 28, 2019) .................. 18

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .................................................................................. 24

*Longest v. Green Tree Servicing LLC*,
308 F.R.D. 310 (C.D. Cal. 2015) .............................................................................. 23

*Ma v. Covidien Holding, Inc.*,
No. SACV 12-02161, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................ 11

*Maine State Ret. Sys. V. Countrywide Fin. Corp.*,
No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .......... 13

*McWhorter v. Ocwen Loan Servicing, LLC*,
No. 2:15-cv-1831 (N.D. Ala.) ................................................................................ 7, 16

*Montesi et al. v. Seterus Inc.*,
No. 2015CA010910 (Palm Beach County, Fla.) ......................................................... 17

*Nachshin v. AOL LLC,*
    663 F.3d 1034 (9th Cir. 2011) ............................................................................ 6

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 19

*Noroma v. Home Point Fin. Corp.,*
    No. 17-cv-07205, 2019 WL 1589980 (N.D. Cal. April 12, 2019) ......................... 21

*Oya v. Wells Fargo Bank, N.A.,*
    No. 3:18-cv-01999, 2019 WL 3239021 (S.D. Cal. July 17, 2019) ......................... 15

*Paz v. AG Adriano Goldschmeid, Inc.,*
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ............. 16

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ........................................................................................... 24

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ............................................................................ 21

*Rannis v. Recchia,*
    380 Fed. App'x 646 (9th Cir. 2010) ................................................................... 21

*Rodriguez v. W. Publ'g Corp.,*
    563 F. 3d 948 (9th Cir. 2009) ...................................................................... 13, 25

*Rosenburg v. I.B.M.,*
    No. CV06–00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ..................... 24

*Sanders v. Loancare, LLC,*
    Case No. 2:18-CV-09376-PA (RAOx) (C.D. Cal.) ............................................ 16

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A,*
    No. 10cv1777 AJB (NLS), 2012 WL 3809123 (S.D. Cal. Sept. 4, 2012) ............. 25

*Silveira v. M&T Bank,*
    No. 2:19-cv-06958-ODW (C.D. Cal.) ................................................................ 17

*Spann v. J.C. Penney Corp.,*
    314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................... 11

*Tapia v. Zale Del. Inc.,*
    No. 13cv1565-PCL, 2017 WL 1399987 (S.D. Cal. Apr. 18, 2017) ...................... 24

*Thomas-Lawson v. Carrington Mortg. Servs., LLC,*
    No. 220CV07301ODWEX, 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) (granting motion to dismiss),
    *appeal filed,* Case No. 21-55459 (9th Cir.) ...................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ...................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................................... 22

*Walters v. Target Corp.,*
    No. 3:16-cv-1678-L-MDD, 2019 W 6696192 (S.D. Cal. Dec. 6, 2019) ................ 18

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ..................................................................... 22, 24

**Statutes**

15 U.S.C. § 1692f ........................................................................................................ 15

15 U.S.C. § 1692f(1) ...................................................................................................... 2

28 U.S.C. § 1715 ........................................................................................................... 9

**Rules**

FED. R. CIV. P. 23(A) .................................................................................................... 21

FED. R. CIV. P. 23(A)(3) ............................................................................................... 22

FED. R. CIV. P. 23(A)(4) ............................................................................................... 22

FED. R. CIV. P. 23(B)(3) .......................................................................................... 21, 23

FED. R. CIV. P. 23(C)(2)(B) ........................................................................................... 24

FED. R. CIV. P. 23(E) .............................................................................................. 11, 12

FED. R. CIV. P. 23(E)(1) ............................................................................................... 21

FED. R. CIV. P. 23(E)(2)(A) ........................................................................................... 19

FED. R. CIV. P. 23(E)(2)(B) ........................................................................................... 13

FED. R. CIV. P. 23(E)(2)(C)(II) ...................................................................................... 18

FED. R. CIV. P. 23(E)(2)(C)(III) ..................................................................................... 20

FED. R. CIV. P. 23(E)(2)(D) ........................................................................................... 18

FED. R. CIV. P. 23(E)(3) ............................................................................................... 12

**Treatises**

*Newberg on Class Actions*, § 11.41 (4th ed. 2013) ...................................................... 13

## I.    INTRODUCTION

Plaintiff Amye Elbert, individually and on behalf of the proposed Settlement Class,[1] seeks preliminary approval of a proposed Settlement of claims against Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint"). The Settlement Agreement, if approved, will create a $1,600,000 Common Fund and will resolve the claims of Plaintiff and the Settlement Class Members deriving from RoundPoint's practice of charging fees for making mortgage payments over the phone or by interactive voice response ("IVR") automated telephone system ("Pay-to-Pay Fees"). The Common Fund, which represents approximately 35% of damages, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and/or Service Award that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation *pro rata* according to the amount of Pay-to-Pay Fees they were charged. In addition to the Common Fund, the Settlement includes important and valuable injunctive relief: as a result of the settlement, RoundPoint has agreed to cease charging Pay-to-Pay Fees for all borrowers in the United States effective June 1, 2021 and continuing until at least two years after the date the Court grants final approval of the Settlement.

The proposed Settlement should be preliminarily approved. It provides valuable relief of 35% of fees collected from the class and includes significant injunctive relief stopping a major mortgage loan servicer from charging Pay-to-Pay Fees for multiple years. Indeed, the injunctive relief will save Settlement Class Members additional expense as they pay their mortgages in the future. This relief was secured after extensive arms-length negotiations by experienced and informed counsel. And although class counsel intends to apply to the Court for a reasonable fee and expense award from the settlement fund not to exceed 33% of the fund, the parties did not discuss any award of attorneys' fees during their negotiations and there is no clear sailing provision by which RoundPoint is prevented from objecting to any fee and expense application it deems unreasonable. As such, this settlement avoids any of the pitfalls flagged by the

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

Ninth Circuit in *Briseno v. Henderson*, 998 F.3d 1014, 1026-28 (9th Cir. 2021): it provides for adequate compensation of the class, maximizes redemption by automatically paying class members instead of requiring them to submit claims, provides for valuable injunctive relief, does not include a clear sailing provision, and provides that no portion of the settlement fund will revert to RoundPoint. The proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. Accordingly, Plaintiff requests that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Amye Elbert as Class Representative, (4) appoint Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (5) order that Class Notice be distributed to the Settlement Class, and (6) schedule a Final Approval Hearing. RoundPoint does not oppose the relief sought in this Motion.

## II.     BACKGROUND

To challenge RoundPoint's practice of charging and collecting illegal processing fees from borrowers paying their monthly mortgage by phone or IVR, Plaintiff initiated a class action lawsuit in this Court, alleging that RoundPoint violated California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), and breached her mortgage agreement. *See* Compl., Dkt. 1. Plaintiff amended her Complaint to state claims under the FDCPA, state debt collection statutes, and breach of contract.  *See* Dkt. 77. Plaintiff's claims are based on one central harm: RoundPoint charged and collected millions of dollars in $10 and $12 Pay-to-Pay Fees from homeowners, in addition to their regular mortgage payments, in violation of state and federal law. The Rosenthal Act is modeled on the federal FDCPA, which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiff alleged that these fees violated the law of the various states and federal law because the fees were not expressly authorized by her mortgage agreement or any statute.

After Plaintiff filed her Complaint, RoundPoint filed its first motion to dismiss the Complaint on March 6, 2020 and Plaintiff opposed. *See* Dkts. 24, 29-32. On August 19, 2020 the Court ruled on the motion without a hearing, granting the motion to dismiss in part and denying in part and also affording

Plaintiff leave to amend. *See* Dkts. 33-34, 43. Plaintiff filed an Amended Complaint and Defendant again filed a motion to dismiss, which was opposed by the Plaintiff. *See* Dkts. 44-47, 49-52. On November 25, 2020, the Court issued an order without a hearing, granting in part and denying in part the motion, permitting all but one of Plaintiff's claims to proceed. *See* Dkt. 56. The parties then commenced discovery and Plaintiff served written discovery requests and a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Zavareei Decl. ¶ 4.

After lengthy discussions, the Parties agreed to engage in mediation with the assistance of Bruce Friedman, an experienced mediator with JAMS, to explore whether a negotiated resolution was possible. *See Id.* ¶¶ 5-6. In advance of the mediation, RoundPoint provided data regarding the Pay-to-Pay Fees collected from borrowers to Class Counsel. Based on that data, Class Counsel prepared a mediation statement and provided it to both Mr. Friedman and RoundPoint's counsel. *Id.* ¶ 7.

On May 25, 2021, the parties mediated before Mr. Friedman for a full day. *Id.* ¶ 11. Class Counsel entered the mediation fully informed of the merits of the Settlement Class members' claims and were prepared to continue to litigate rather than accept a settlement that was not in the Plaintiff's and Settlement Class's best interests. *Id.* ¶ 10. After a full day of hard-fought negotiations, where both sides made presentations to the mediator and all attendees, the parties reached an agreement on all material terms, including the amount of the Common Fund and the scope of injunctive relief. *Id.* ¶¶ 11-12. Class Counsel prepared the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language of the Agreement now before the Court. *Id.*

## III.    THE SETTLEMENT AGREEMENT

### A.    The Proposed Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

> All persons who (1) were borrowers on residential mortgage loans on properties located in the United States whose loans were serviced by RoundPoint, and (2) paid a fee to RoundPoint for making a loan payment by telephone or IVR from January 1, 2016 to May 31, 2021.

Zavareei Decl. Ex. 1 ("SA") § II.DD. Solely for the purpose of effectuating the Settlement set forth in the Settlement Agreement and subject to Court approval, the Parties have stipulated to amend the claims and class definition in the First Amended Complaint to encompass the claims and members of the Settlement Class in advance of or concurrently with the filing of the motion for preliminary approval.  The Class Period ends on May 31, 2021 because RoundPoint agreed to cease collecting Pay-to-Pay Fees as of June 1, 2021 and to continue such cessation until at least two years after the Court grants final approval of the Settlement.

The Settlement Class is broader than the three classes set out in Plaintiff's First Amended Complaint (Dkt. 44), which contemplated the following classes:

> *California Class*: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by Roundpoint, (3) with deeds of trust incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, (4) and who paid a fee to Roundpoint for making a loan payment by telephone, during the applicable statutes of limitations through the date a class is certified.

> *Rosenthal Subclass*: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by Roundpoint, (3) with deeds of trust incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, (4) who paid a fee to Roundpoint for making a loan payment by telephone, (5) in connection with a payment made after the due date, during the applicable statutes of limitations through the date a class is certified.

> *FHA Subclass*: All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by Roundpoint, (3) with deeds of trust incorporating standard uniform covenants from FHA model mortgages, (4) and who paid a fee to Roundpoint for making a loan payment by telephone, during the applicable statutes of limitations through the date a class is certified.

The Settlement Class includes all borrowers nationwide with residential mortgage loans serviced by RoundPoint who paid a Pay-to-Pay fee during the Class Period, not just borrowers in California, or borrowers with certain, specified deeds of trust. This broader class is appropriate because the settlement amount was negotiated with reference to the total Pay-to-Pay fees paid by borrowers nationwide, and California borrowers account for approximately one tenth of those fees.

The Settlement Class also clarifies that those who paid fees by making payments through IVR, RoundPoint's automated telephone system, are included in the class. Finally, the proposed definitions in Ms. Elbert's First Amended Complaint included borrowers who paid the fees "during the applicable

statutes of limitations." Because of the variety of claims and related statutes of limitations at issue, the Parties agreed to settle all claims going back to January 1, 2016.

**B.      Benefits to the Settlement Class**

**1.      Monetary Benefits**

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $1,600,000, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any taxes owed by the Gross Settlement Amount (but not any taxes owed by any individual Class Counsel, Plaintiff, or Settlement Class Members), and (4) any Fee and Expense Award approved by the Court. *See* SA § IV.A. The settlement amount represents 35% of the total pay-to-pay fees collected by RoundPoint from the class during the class period. After payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, the Net Settlement Fund will be distributed to Settlement Class Members *pro rata*. SA § IV.B.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive benefits under the Settlement. Instead, RoundPoint will provide the Settlement Administrator with a Settlement Class Member List that includes the names, last known mailing addresses, the last known email addresses of the Settlement Class Members (if the Court's Preliminary Approval Order provides for email notice), and the dates and amounts of each Pay-to-Pay Fee paid during the Class Period. *Id.* §§ II.FF, VI. RoundPoint estimates that the Settlement Class includes approximately 123,614 Settlement Class members. Zavareei Decl. ¶ 33. In Plaintiffs' Counsel's experience, on the low end, mortgage servicers retain email addresses for at least 30% of Settlement Class Members. *Id.* ¶ 34.

Each Settlement Class Member who paid at least one Pay-to-Pay Fee during the Class Period shall be entitled to receive a *pro rata* share of the Net Settlement Fund. SA § IV.B. Co-borrowers on a single class account shall be entitled to a single total Settlement Payment per account, but all fees paid will be eligible for a *pro rata* share. *Id.* Settlement Class Members will automatically receive their payments by check and may also elect a digital payment option via the Settlement Website. *Id.* Prior to mailing checks, the Settlement Administrator shall attempt to update the last known address of the Settlement Class Member through the National Change of Address database. *Id.* If a check is returned and marked "Undeliverable,"

the Settlement Administrator shall make reasonable efforts to locate the Settlement Class Member, reissue the check, and send it to a forwarding address. *Id.* Any checks that are not cashed within 90 days shall be voided and the money returned to the Net Settlement Fund. For good cause shown by the Settlement Class Member involved, the Settlement Administrator may reissue a check for up to an additional 90-day period following the original 90-day period. *Id.*

After 180 days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members via a secondary distribution. If the amount of remaining funds is so minimal that a secondary distribution would be impracticable or infeasible, then upon approval to the Court, the remaining funds shall be distributed to the *Cy Pres* Recipient. The Parties propose that the Court approve as *Cy Pres* Recipient NeighborWorks America, a 501(c)(3) charitable organization that works with nonprofits around the country on housing issues. One area in which it works is on issues relating to financial health, and ensuring homeowners have access to information to make smart financial decisions to ensure they can pay their mortgages and remain in their homes. *See* https://www.neighborworks.org/Homes-Finances/Financial-Health. Because Pay-to-Pay fees are typically paid by those homeowners who live on more fixed budgets and need more control over the timing of their mortgage payments than payment by mail or automatic debits would allow, NeighborWorks' mission is aligned with the objectives of the litigation and the Settlement Class Members' interests. *See Nachshin v. AOL LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). In no event shall any remaining funds be returned to RoundPoint.

### 2. Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes critical injunctive relief. As of June 1, 2021, RoundPoint ceased charging or collecting Pay-to-Pay fees to any borrower in the United States. And as a result of the Settlement of this case, RoundPoint has agreed to refrain from charging or collecting such fees from borrowers in the United States for at least two years after the entry of a Final Approval Order, regardless of whether subsequent changes in law authorize such fees. SA § IV.C. Now, Settlement Class Members whose loans are still serviced by RoundPoint will be able to make payments over the phone or via IVR without incurring an additional fee. Counsel estimates that the value

of this injunctive relief is significant for Settlement Class Members because it may result in over $2 million in savings over the next two years. Zavareei Decl. ¶ 13. While there have been settlements of several similar cases in recent years, to the best of Class Counsel's knowledge, only one of them has included injunctive relief prohibiting the defendant from charging further Pay-to-Pay Fees. Indeed, at least one settlement, *McWhorter*, included an amendment to Settlement Class Members' mortgage documents to *permit* the defendant to continue charging the challenged fees.

### C.    Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is Kroll Settlement Administration (formerly known as Heffler Claims Group LLC), a leading class action administration firm in the United States. Zavareei Decl. ¶ 32. The Parties reviewed proposals from three prominent settlement administrators before deciding on Kroll based on overall cost and value to the Settlement Class. *Id.*

All Administrative Costs shall be paid from the Gross Settlement Fund. SA § IV.A. Currently, the Settlement Administrator estimates that the costs of notice will be approximately $204,805. Zavareei Decl. ¶ 35. The Settlement Administrator will oversee the provision of Class Notice to the Settlement Class Members and administration of the Common Fund.

### D.    Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representative or Settlement Class Members arising out of, based upon, or related in any way to the charging, collection, or attempted collection of Pay-to-Pay Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future. SA § V. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative Complaint.

### E.    Proposed Plan of Notice

The Parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances of the instant case. Zavareei Decl. ¶ 36. Within 14 days or such other time as provided in the Preliminary Approval Order, RoundPoint, at its own

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

7

expense, will compile the Settlement Class Member List and provide it to the Settlement Administrator and Class Counsel. SA § VI.

As soon as practicable, but starting no later than thirty (30) days after receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Email Notice to be sent to all Settlement Class Members for whom the Settlement Class Member List includes an email address. *Id.* In that same timespan, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members for whom no email address appears on the Settlement Class Member List after running the last known addresses of the members of the Settlement Class using the National Change of Address database. *Id.* The Settlement Administrator shall also cause the Postcard Notice to be sent to all Settlement Class Members whose Email Notices are returned undeliverable. *Id.* If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall make one attempt to re-mail the Postcard Notice to that forwarding address. *Id.* If the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall make a reasonable attempt to locate an updated address and make one attempt to re-mail the Postcard Notice to the updated address. *Id.*

The Settlement Administrator shall mail or email the Long Form Notice to any Settlement Class member who requests a copy. *Id.* In addition, prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. *Id.* The Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative Complaint in the Action; and (6) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. *Id.* The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under the Settlement Agreement. *Id.*

The Settlement Administrator shall also establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. The number shall be included in the Class Notice and posted on the Settlement Website. *Id.*

The Settlement Administrator will also ensure that the necessary and timely notice is provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.*

**F.      Opt-Outs and Objections**

The Class Notice will advise Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines. SA § VII. The Class Notice will also advise Settlement Class Members that the Court will accept substantial compliance with the instructions for opting out from or objecting to the Settlement.

Settlement Class Members who choose to opt out must submit a written request for exclusion. *Id.* Any request for exclusion must be postmarked on or before the "Response Deadline"—105 days after entry of the Preliminary Approval Order. *Id.* §§ II.BB, VII. Any request for exclusion must include the name of the case, and the name, address, phone number, and signature of the borrower or borrowers seeking exclusion and must contain language clearly indicating a request for exclusion. *Id.* § VII. If there are co-borrowers on the loan all co-borrowers must sign the request for exclusion. *Id.* Any Settlement Class Member who does not submit a request to opt out in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary. *Id.*

Settlement Class Members who wish to object to the Settlement must mail a written objection, postmarked on or before the Response Deadline. *Id.* All objections must be in writing and personally signed by the Settlement Class Member and include: (1) the objector's name, address, email address if any, and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the objection; (4) a list of all cases in which the objector has objected to a class action settlement, including case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Settlement Class Member and/or

their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Settlement Class Member intends to call; and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class. *Id.*

Any Settlement Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. *Id.* However, if the Settlement Class Member intends to appear through counsel, the Settlement Class Member must have submitted a written objection. *Id.* Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. *Id.* Any Settlement Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony. *Id.*

G.      **Attorneys' Fees and Costs and Service Award**

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. SA § IV.E. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one third of the Gross Settlement Fund (33.33%) as well as reasonable expenses incurred in the litigation. *Id.* Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to the Settlement Class Members. *Id.* § IV.B. Class Counsel will provide with their petition lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one. *Id.* § IV.E. RoundPoint has not agreed to any award of attorneys' fees or expenses and may respond to the Fee and Service Award Application as it sees fit. *Id.*

Class Counsel may also petition the Court for up to $5,000 for Amye Elbert as a Service Award to compensate her involvement in the Action. *Id.* § IV.D. Any approved award will be deducted from the Gross Settlement Fund prior to distribution to the Settlement Class Members. *Id.* § IV.B.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Award. *Id.* § IV.D-E.

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of scarce judicial resources and achieves the speedy provision of justice. Federal Rule of Civil Procedure 23 requires court approval of a class action settlement, a decision that is committed to the sound discretion of the trial judge. Fed. R. Civ. P. 23(e). *See also In re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000) (recognizing that the trial judge is "exposed to the litigants, and their strategies, positions, and proof").

"Approval of a class action settlement requires a two-step process — a preliminary approval followed by a later final approval." *Behfarin v. Pruco Life Ins. Co.*, No. CV 17-5290-MWF-FFMx, 2019 WL 7188575, at *5 (C.D. Cal. Nov. 26, 2019) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016)). Preliminary approval is appropriate where the "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal. Jan. 31, 2014). Courts in this District generally consider at preliminary approval whether a proposed settlement is both procedurally and substantively fair and reasonable. *See, e.g., Behfarin*, 2019 WL 7188575, at *6. The question for the Court is whether the settlement is "within the range of reasonableness." *Ma*, 2014 WL 360196, at *10.

Courts in the Ninth Circuit consider specific factors when approving a settlement. *See e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina v. Marriott Vacations Worldwide Corp.*, No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019). These factors include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed

settlement. *See Churchill Vill.,* 361 F.3d at 575; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, courts should heavily scrutinize settlements that have hallmarks of collusion, such as those where plaintiffs' counsel receives a disproportionate distribution of the settlement, where the settlement agreement includes "clear-sailing" provisions not to challenge plaintiffs' counsel's request for fees, or where the agreement contains reverter clauses to distribute remaining funds back to defendants rather than to the class. *See Briseno,* 998 F.3d at 1026-28. Rule 23, as amended in 2018, provides additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* Fed. R. Civ. P. 23(e)(3). Those factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate; and (D) the proposed settlement treats class members equitably relative to each other. Plaintiff will address the factors relevant to both standards, many of which overlap.

## V.   ARGUMENT

### A.   The Settlement Agreement warrants preliminary approval.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. The Settlement, which was reached in the absence of collusion and is the result of good-faith, informed, arms' length negotiation between competent counsel, in conjunction with an experienced mediator, satisfies each factor for preliminary approval in the Ninth Circuit and under Rule 23. *See Hanlon,* 150 F.3d at 1026; Fed. R. Civ. P. 23(e).

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes her claims are meritorious and that she would prevail if this case proceeded to trial. RoundPoint argues that Plaintiff's claims are unfounded, denies any liability, and has indicated a willingness to litigate vigorously. Plaintiff faces the challenge of a motion for summary judgment and opposition to a motion for class certification, as well as the risk of a loss at trial. The only thing that is certain is that if this case continues in litigation, the Settlement Class Members will need to wait much longer before receiving any recovery. In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review.

### 1. The Settlement is the product of good-faith, informed, arms' length negotiations.

The Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Pub'lg Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see* Fed. R. Civ. P. 23(e)(2)(B). A presumption of fairness applies when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval. *See, e.g.*, *Maine State Ret. Sys. V. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) (citing *Newberg on Class Actions*, § 11.41 (4th ed. 2013)). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011)("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness.").

Here, the Settlement is the result of intensive, arms' length negotiation between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. Before agreeing upon the terms of the Settlement, the Parties mediated for a full day before Bruce Friedman of JAMS. Zavareei Decl. ¶¶ 11-12. In advance of that mediation, RoundPoint provided Plaintiff with its internal data demonstrating the size of the Settlement Class and the amount of damages in issue. *Id.* ¶ 7. Because Class Counsel has litigated and settled other cases involving similar factual and legal issues, Class Counsel understands what information is critical to determine membership in the Settlement Class and how to calculate damages. *Id.* ¶ 8. The Parties' vigorous negotiation of the claims in this action evidences an absence of collusion and the presence of fairness and good faith.

In addition to these facts, the Settlement passes muster under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), which identifies the indicia of collusion that courts must look for when a class action settles prior to class certification. *See id.* at 947. These "subtle signs" include when the class receives no monetary distribution, or when class counsel receives a disproportionate share of the settlement; the presence of a clear sailing arrangement; and a provision for any portion of the fund to revert to the defendant. *Id.*; *see also Briseno*, 998 F.3d at 1026-28. Unlike the claims-made settlements in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

13

*Bluetooth* and *Briseno*, this settlement is a true common fund. Because of that, Settlement Class Members are receiving substantial cash benefits and valuable injunctive relief, and Class Counsel intends to seek a Fee and Expense Award well within the range of reasonableness. There is no clear sailing agreement; rather, RoundPoint has reserved the right to object to any Fee and Service Award Application it deems unreasonable. And there is no reversionary component: any unclaimed funds will be paid to a *Cy Pres* Recipient, and under no circumstances will any funds be returned to RoundPoint. The absence of any indicia of collusion under *Bluetooth* provides further evidence that the Settlement is non-collusive and fair.

### 2.      The Settlement is fair, adequate, and reasonable.

A review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing.

### a.      The Strengths and Risks of Plaintiff's Case

***First***, the Settlement is fair, adequate, and reasonable in light of the strengths and risks of Plaintiff's case. While confident in the strength of her claims, Plaintiff and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* Zavareei Decl. ¶ 16. Should the case proceed in litigation, Plaintiff could see her claims dismissed or narrowed by a motion for summary judgment, at trial, or on a subsequent appeal. *Id.* She also faces the risk that class certification could be denied. *Id.* ¶ 17. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in *zero* recovery to the class. *Id.* ¶ 18. And even if Plaintiff prevailed at trial, any recovery would likely be delayed for years by an appeal. *Id.* ¶ 19.

Plaintiff faces substantial risks to her claims should the Settlement not be approved. While the Court largely denied RoundPoint's motion to dismiss, indicating that it resolved many of the issues in this case, that is not ultimately a guarantee of success on the merits. RoundPoint could appeal any order granting class certification or any judgment rendered for Plaintiff. There is no Ninth Circuit or California Supreme Court precedent finding that Pay-to-Pay Fees are illegal under either the federal FDCPA or the Rosenthal Act. Rather, shortly before this settlement was reached, several plaintiffs filed an appeal with the Ninth Circuit over a district court's decision to dismiss these claims in full. *See Thomas-Lawson v. Carrington*

*Mortg. Servs., LLC*, No. 220CV07301ODWEX, 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) (granting motion to dismiss), *appeal filed*, Case No. 21-55459 (9th Cir.).[2] A similar matter was also appealed to the Fourth Circuit. While this Court found in favor of Plaintiff at the motion to dismiss stage, one of the threshold legal issues is in flux. In addition to the issues in *Thomas-Lawson*, Plaintiff Elbert would need to continue to persuade the Court that the Rosenthal Act applies to mortgage servicers regardless of whether they are considered debt collectors under the federal FDCPA. *See, e.g., Oya v. Wells Fargo Bank, N.A.*, No. 3:18-cv-01999, 2019 WL 3239021, at *4-6 (S.D. Cal. July 17, 2019) (dismissing Rosenthal Act claim based on 15 U.S.C. § 1692f because defendant was not a "debt collector" under the Rosenthal Act); *Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 WL 4805567, at *8-11 (N.D. Cal. Oct. 15, 2017) (same).

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 120,000 Settlement Class Members. And these benefits are substantial: 35% of damages is on par with the percentage of damages achieved in settlements of other similar cases. *See* App'x A. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). This factor favors preliminary approval.

### b.   The Risks, Complexity, and Likely Duration of Further Litigation

*Second*, the risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Zavareei Decl. ¶¶ 20-22. This case is settling in its early stages; if the Settlement

---

[2] While the majority of courts are in accord with this Court, *Thomas-Lawson* is not the only divergent case, and thus, there is no guarantee on how the Ninth Circuit will rule. *See, e.g., Lish v. Amerihome Mortg. Co.*, No. 220-CV-07147JFWJPRX, 2020 WL 6688597, at *4 (C.D. Cal. Nov. 10, 2020) (finding no Rosenthal Act violation where "Defendant simply offered Plaintiff the option to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so."); *Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (finding a convenience fee charge was not "incidental to the principal obligation" because a consumer must "choose to affirmatively and separately opt in to" the alternative payment method).

is not approved, the parties will likely need to litigate through multiple dispositive motions and a motion for class certification. *Id.* ¶ 16. The litigation would likely take years to resolve and involve expensive expert discovery. *Id.* ¶¶ 19-20.  The Parties would need to resolve discovery disputes and incur the expense and burden of preparing for trial. Even if Plaintiff succeeds at class certification and the merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Settlement Class Members. *Id.* ¶ 20. Instead, there would be multiple points at which the Class's claims could be narrowed or dismissed. *Id.* ¶ 16. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors preliminary approval.

### c.      The Risk of Maintaining Class Action Status

*Third*, the risk of maintaining class action status through trial supports preliminary approval of the Settlement. Zavareei Decl. ¶ 17. The class has not yet been certified, and RoundPoint will oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). This factor favors preliminary approval.

### d.      The Amount Offered in Settlement

*Fourth*, the amount offered in settlement supports preliminary approval. The Common Fund of $1,600,000 is an excellent recovery for the class, representing approximately 35% of the total Pay-to-Pay fees collected by RoundPoint from the settlement class. Zavareei Decl. ¶ 21. After Court-approved attorneys' fees, expenses, service awards, and the costs of Notice are deducted, the approximate $846,915 will be distributed to Settlement Class Members.

This settlement is on par with other settlements in similar cases involving Pay-to-Pay Fees, in that it will return a significant percentage of fees to the Settlement Class. *See* App'x A (chart documenting similar settlements). *e.g.*, Minute Order, *Sanders v. Loancare, LLC*, Case No. 2:18-CV-09376-PA (RAOx) (C.D. Cal.), Dkt. 155 (common fund representing 38.64% of pay-to-pay fees collected); Final Order and Judgment, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-1831 (N.D. Ala.), Dkt. 71 (common fund representing

30% of pay-to-pay fees collected); Final Order and Judgment, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 (common fund representing approximately one third of pay-to-pay fees collected)[3]; *Montesi et al. v. Seterus Inc.*, No. 2015CA010910 (Palm Beach County, Fla.) (common fund representing 35% of pay-to-pay fees collected ); *Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW (C.D. Cal.) (proposed settlement of 35% of pay-to-pay fees collected). Because the settlement amount here is greater than other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id.*

The Settlement is also significant in that Class Counsel obtained valuable injunctive relief in the form of RoundPoint's agreement to cease charging Pay-to-Pay Fees and to continue not to charge such fees for two years after final approval. The injunctive relief is estimated to deliver approximately $2 million in additional benefits to the Settlement Class, assuming a comparable rate of telephone and IVR payments going forward.[4] Thus, not only will the Settlement return 35% of damages to Settlement Class Members, but it will also save them the burden of paying Pay-to-Pay Fees in the future.

### e.   The Allocation of the Settlement

*Fifth*, the allocation of the Settlement is fair and reasonable, and the manner of administrating relief will be effective. Payments will be made on a *pro rata* basis depending on the amount of Pay-to-Pay Fees each Settlement Class Member paid. SA § IV.B. A *pro rata* distribution means that Settlement Class

---

[3] *See also* Motion for Final Approval of Class Action Settlement at 12, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash. Oct. 3, 2018), Dkt. 109 (explaining that the settlement amount represents approximately one-third of damages).

[4] Unlike the injunctive relief in *Briseno*, which the Ninth Circuit determined to be "illusory," 998 F.3d at 1028-29, the injunctive relief here has a quantifiable value. RoundPoint continues to service the mortgage loans at issue in the case, so absent the settlement, it would retain the power to reinstate the fees. *Compare Briseno*, 998 F.3d at 1028 (explaining that because the settling defendant no longer owned the product at issue, it did not have the power to resume using the misleading label). And the estimated value of the injunction as being worth $2 million is based on the fees RoundPoint actually charged in the past, not unverifiable expert testimony. *Compare id.* at 1029.

Members will be compensated in direct proportion to the fees they were charged. Those who paid more in Pay-to-Pay Fees will receive a relatively larger share of the Net Settlement Fund, and those who paid less will receive less. This method is consistent with the distribution of common funds in other fee cases, *see, e.g.*, *Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 2269958, at *3 (S.D. Cal. May 28, 2019) (approving settlement from which class members would receive *pro rata* distribution of common fund based fees paid); *Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2019 W 6696192 (S.D. Cal. Dec. 6, 2019) (same), and treats Settlement Class Members equitably. *See* FED. R. CIV. P. 23(E)(2)(D).

While it is true that the California Settlement Class Members, if successful, could obtain statutory damages not available to the other Class Members, that does not mean that the Settlement treats the California Settlement Class Members unfairly by allotting them the same *pro rata* shares as the other Settlement Class Members. The Rosenthal Act caps statutory damages at either $500,000 or 1% of the debt collector's net worth. Because of RoundPoint's relatively small size, any distribution of statutory damages to Settlement Class Members in California would be minimal. This Settlement—which is in line with other similar settlements, *see* App'x A, and includes RoundPoint's commitment to cease charging the fees altogether—did not leave a material amount of statutory damages on the table in a way that harms the California members of the Settlement Class. In addition, given the fixed costs of settlement administration, a nationwide settlement reduces the relative settlement administration costs borne by California class members, allowing a greater portion of the settlement fund to go to the class members themselves.

The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. Zavareei Decl. ¶ 32. Settlement Class Members are not required to fill out an unwieldy claim form or even submit claims at all. The Settlement Administrator will mail checks to those who do choose to receive payment through digital means, after running their addresses through the National Change of Address database.

### f.      The Extent of Discovery Completed and Stage of Proceedings

*Sixth*, the extent of discovery completed and the stage of proceedings favor preliminary approval. The fact that this case is in its early stages means that neither side has spent significant sums on the litigation. However, prior to filing, Class Counsel engaged in substantial investigation of RoundPoint's Pay-

to-Pay Fees and reviewed and analyzed informal discovery from RoundPoint. Class Counsel have litigated many similar cases based on Pay-to-Pay Fees and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the discovery process, while allowing the parties to focus on the most relevant discovery. Zavareei Decl. ¶¶ 7-9. Plaintiff has conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. Thus, "the efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting preliminary approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017).

### g.      The Views of Class Counsel

*Seventh*, Class Counsel's view is that this Settlement is an outstanding recovery for the Settlement Class. Zavareei Decl. ¶ 21. Class Counsel is experienced in class action litigation, including cases concerning Pay-to-Pay Fees. *Id.* ¶ 30; Declaration of James L. Kauffman ¶¶ 4-6. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports preliminary approval.

### h.      Government Participant and Class Member Reaction

*Last*, there is no government participant and, because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral. *See Hillman*, 2017 WL 10433869, at *8.

### 3.      The Class Representatives and Class Counsel have adequately represented the proposed class.

Under Rule 23(e)(2)(A), the Court should also consider whether the class representative and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina*, 2019 WL 8163642, at *6. Here, Amye Elbert assisted Class Counsel by providing documents, reviewing the pleadings, and reviewing the Settlement Agreement. *See* Zavareei Decl. ¶ 24. The

class representative does not have any conflicts with the proposed class and has adequately represented the class in the litigation. *Id.* ¶ 23.

Class Counsel has also adequately represented the class. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.* ¶ 25. And Class Counsel is currently litigating over ten other proposed class actions against mortgage servicers like RoundPoint involving Pay-to-Pay Fees. *Id.* ¶ 30; Declaration of James L. Kauffman ¶¶ 4-6. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving servicers, financial institutions, and fees. *Id.* ¶¶ 29-30. This understanding of the intricacies of the consumer finance and mortgage servicing space provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Settlement Class—and prepared them to fight this Action to a successful conclusion if necessary. *Id.* ¶ 8.

Before filing the Complaint, Class Counsel spent many hours investigating potential claims against RoundPoint. *Id.* ¶ 3. Class Counsel interviewed potential plaintiffs and gathered information about RoundPoint's conduct and its impact on consumers. *Id.* This information was essential to Class Counsel's ability to evaluate the risks of this litigation and the benefits to the Settlement Class. Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id.* After Plaintiff's lawsuit was filed, Class Counsel briefed and defeated RoundPoint's two motions to dismiss, including drafting an amended complaint, and served written discovery upon RoundPoint. Class Counsel's representation of Plaintiff and the Settlement Class has been adequate.

### 4.    The proposed Fee and Expense Award is fair and reasonable.

Finally, the terms of the proposed award of attorneys' fees are also fair. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). Class Counsel will file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed one third (33.33%) of the Gross Settlement Fund, plus their reasonable expenses of litigation. While the proposed Fee and Expense Award exceeds the 25% benchmark generally used to evaluate attorneys' fee awards in common fund cases, here, the requested award is only 14.8% of the total value of the Settlement once the estimated value of injunctive relief is considered (approximately $2 million). This percentage is well within the range of reasonableness. *Powers v. Eichen*, 229 F.3d 1249, 1256-57

1  (9th Cir. 2000) (upward departure from 25% acceptable); *In re Heritage Bond Litig.*, No. 02-ML-1475-

2  DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (approving attorneys' fees of one-third of the

3  settlement fund).

4       Class Counsel will also seek a Service Award for Amye Elbert, and the amount she intends to seek

5  is also reasonable and fair. The Settlement Agreement authorizes the Class Representative to seek a service

6  award of up to $5,000. SA §IV.D. This amount is well within the range of approval for class action

7  settlements that provide significant benefits to the class. *See, e.g.*, *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347,

8  2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive

9  award is presumed reasonable." (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202,

10  at *7 (N.D. Cal. Feb. 6, 2012)); *Hickcox-Huffman v. U.S. Airways, Inc.*, No. 10-cv-05193, 2019 WL 1571877, at

11  *2 (N.D. Cal. April 11, 2019) (approving service award of $10,000); *Noroma v. Home Point Fin. Corp.*, No. 17-

12  cv-07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) (approving service award of $10,000).

13       As discussed above, neither final approval, nor the size of the Common Fund, are contingent upon

14  approval of the full amount of requested Fee and Expense Award or Service Award, SA § IV.D-E, and

15  RoundPoint retains the right to object to the Fee and Expense Award if it deems it to be unreasonable.

16       **B.    Certification of the Settlement Class is appropriate.**

17       On a motion for preliminary approval, the parties must also show that the Court "will likely be able

18  to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The Settlement

19  Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

20            **1.    The Settlement Class Meets the Requirements of Rule 23(a)**

21       The Settlement Class as defined meets Rule 23(a)'s numerosity requirement. The class definition

22  encompasses more than 120,000 Class Members. This number of Class Members demonstrates that joinder

23  is a logistical impossibility. *See, e.g.*, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)

24  (numerosity is generally satisfied when a class has at least 40 members); *see also Rannis v. Recchia*, 380 Fed.

25  App'x 646, 651 (9th Cir. 2010) (same).

26       The Settlement Class also satisfies the commonality requirement, which requires that class

27  members' claims "depend upon a common contention," of such a nature that "determination of its truth or

falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are several common questions in this case, including: whether RoundPoint breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements; whether RoundPoint violated state or federal law by charging Pay-to-Pay Fees; and whether Plaintiff and the Class were damaged by RoundPoint's conduct. Commonality requires a plaintiff "to demonstrate that their claims 'depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Gonzalez-Tzita v. City of L.A.*, No. CV 16-0194 FMO(Ex), 2019 WL 7790440, at *5 (C.D. Cal. Dec. 9, 2019) (citing *Dukes*, 564 U.S. at 350); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Plaintiff's claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by class members' mortgages nor permitted by law.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To satisfy typicality, a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Felix v. WM. Bolthouse Farms, Inc.*, No. 1:19-cv-00312-AWI-JLT, 2020 WL 2175352, at *5 (E.D. Cal. May 4, 2020) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537 (N.D. Cal. 2015) (typicality was met where the named plaintiffs, like class members, were all charged for marked-up broker price opinions by mortgage company). Here, Plaintiff's claims are typical of the claims of Settlement Class Members because they arise from the same course of alleged conduct: charging borrowers a fee to make payments that is not authorized by borrowers' mortgages or permitted by law.

Finally, the adequacy requirement is satisfied where the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

22

with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015)).

Here, the Plaintiff has no conflicts of interest with other class members, and she and her counsel will and have vigorously prosecuted this case on behalf of the class. *See* Zavareei Decl. ¶ 23; *see*, *supra*, § V.A.3.

## 2.     The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(B)(3).

Common questions predominate over any questions affecting only individual members here. The questions common to all Settlement Class members include whether RoundPoint can charge Pay-to-Pay Fees if the fees are not expressly authorized by the mortgage, not permitted by law, and exceed the servicer's actual costs. These questions can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." (citation and quotation marks omitted)). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Longest*, 308 F.R.D. at 326-28 (finding predominance met in class action alleging breach of contract and UCL violations against mortgage servicer for charging inflated charges and alleged kickbacks for forced place insurance because claims could be proven through common evidence of defendants' uniform policies).

Class certification here is also "superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(B)(3). Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress.

1  *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

2  2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to

3  class treatment); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed

4  by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

5    **C.**  **The Court should approve the proposed notice plan.**

6      **1.**  **The proposed notice plan is adequate and warrants preliminary approval.**

7    The parties' proposed notice plan is formulated to conform with the procedural and substantive

8  requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the

9  settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B);

10  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76

11  (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through

12  reasonable effort."). The mechanics of the notice process are left to the discretion of the Court, subject

13  only to the broad "reasonableness" standards imposed by due process. *See Tapia v. Zale Del. Inc.*, No.

14  13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. Apr. 18, 2017); *see also Rosenburg v. I.B.M.*, No. CV06–

15  00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (stating that notice should inform class members

16  of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of

17  settlement).

18    The Class Notice is comprised of direct notice in the form of Email Notice and Postcard Notice.

19  In addition, the Settlement Administrator will establish the Settlement Website, where the Long Form

20  Notice will be available, along with important case documents. And a toll-free telephone number will be

21  available to Settlement Class Members with questions. The operative notice plan is the best notice

22  practicable and is reasonably designed to reach the Settlement Class Members. *See* Zavareei Decl. ¶ 36. The

23  Ninth Circuit has approved class notice in the form of email and postcard notice. *See, e.g.*, *In re Online DVD-*

24  *Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding notice satisfied due process and Rule 23(e)

25  where an initial email notice was supplemented by a postcard notice to those whose emails bounced back).

26  Here, contact information will initially be provided by RoundPoint, which, as a mortgage servicer regularly

27  issuing bills to class members, is highly likely to have the most accurate contact information. When

combined with a process to confirm addresses through the National Change of Address database before sending notice and subsequent skip tracing in the unlikely instance that any notice is returned as undeliverable, the notice program should cause nearly every class member to receive actual notice.

Moreover, the substance of the notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.,* 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original). The Notice contains all the critical information required to apprise Settlement Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Settlement Class Members to call with questions. This approach to notice is adequate. *See, e.g. Sarabri v. Weltman, Weinberg & Reis Co., L.P.A,* No. 10cv1777 AJB (NLS), 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with full settlement details and the claim administrator's toll free number); *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. 2014) (same). This information undoubtedly provides "sufficient detail" to allow class members with adverse viewpoints to conduct further investigation and "come forward to be heard." *Lane,* 696 F.3d at 826 (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims"). Accordingly, this notice program will fully apprise Settlement Class Members of their rights under Rule 23(e) and should be approved.

## VI.	CONCLUSION

For the foregoing reasons, Plaintiff Amye Elbert requests that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint her as Class Representative, appoint Tycko & Zavareei LLP and Bailey & Glasser LLP as Class Counsel, direct that Notice be distributed to the Settlement Class, and schedule a Fairness Hearing.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

25

Dated:  October 1, 2021                 Respectfully Submitted,

                                         _/s/_  *Kristen G. Simplicio*
                                        Kristen G. Simplicio (SBN 263291)
                                        Hassan A. Zavareei (SBN 181547)
                                        TYCKO & ZAVAREEI LLP
                                        1828 L Street NW, Suite 1000
                                        Washington, D.C. 20036
                                        202-973-0900 (p)
                                        202-973-0950 (f)
                                        ksimplicio@tzlegal.com
                                        hzavareei@tzlegal.com

                                        James L. Kauffman (admitted *pro hac vice*)
                                        BAILEY & GLASSER, LLP
                                        1055 Thomas Jefferson St. NW, Suite 540
                                        Washington, DC 20007
                                        202-463-2101 (p)
                                        202-463-2103 (f)
                                        jkauffman@baileyglasser.com

                                        Todd Walburg (SBN 213063)
                                        BAILEY & GLASSER LLP
                                        475 14th Street, Suite 610
                                        Oakland, CA 94612
                                        Telephone: 510-207-8633
                                        twalburg@baileyglasser.com

                                        Victor S. Woods (*pro hac vice*)
                                        BAILEY & GLASSER LLP
                                        209 Capitol Street
                                        Charleston, West Virginia
                                        (304) 345-6555 (p)
                                        (304) 342-1110 (f)
                                        jmarshall@baileyglasser.com

                                        *Attorneys for Plaintiff and the Putative Class*