Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

[Additional counsel on signature page]

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>Defendant. | **Case No. 3:20-cv-00250-MMC**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Action for Breach of Contract; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; State Debt Collection and Mortgage Servicing Laws** |

Plaintiff Amye Elbert, on behalf of herself and all others similarly situated, alleges claims of breach of contract, violations the Federal Debt Collection Practices Act ("FDCPA"), and violations of the laws of the various states that regulate debt collection practices and mortgage servicing activities against Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint"). In support of these claims, Plaintiff states as follows:

## NATURE OF THE ACTION

1. Defendant RoundPoint, a servicer of residential mortgages, routinely violates state debt-collection law and breaches the uniform terms of borrowers' mortgages by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by telephone, ("Pay-to-Pay Fees"). RoundPoint charges borrowers fees of $10 (automated or "Interactive Voice Response") or $12 (representative assisted) for mortgage payments made over the phone.

2. The vast majority of the mortgage loans serviced or subserviced by RoundPoint are secured by deeds of trust conforming to the model mortgage documents of Fannie Mae/Freddie Mac, the Federal Housing Administration ("FHA") and other governmental agencies (the "Uniform Mortgages").

3. Many of the provisions or "uniform covenants" found in the Uniform Mortgages are the same or substantially similar, including restrictions regarding the charging of fees. In particular, the Uniform Mortgages prohibit the assessment of fees that are not expressly authorized by law. In other words, regardless of the government agency that backs the mortgage, under the terms of each Uniform Mortgage, it is not enough that there is no express prohibition on the assessment of a fee; rather, all Uniform Mortgages are alike in that they each require that any fees assessed be those that are expressly authorized by law or contract.

4. RoundPoint services mortgages throughout the United States and is supposed to be compensated out of the interest paid on each borrower's monthly payment—not via additional "service" fees that do not reflect the cost to RoundPoint of providing such services. Under the laws of various states, RoundPoint cannot mark-up the amounts it pays third parties to provide borrowers' services and impose unauthorized charges to create a profit center for itself. Here, RoundPoint charged borrowers for telephone Pay-to-Pay Fees through SpeedPay, an automated payment processing system created and

maintained by Western Union. For performing this work, RoundPoint pays Western Union about $0.50 or less per transaction and pockets the difference ($9.50 and $11.50) for itself as profit.

5.     Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage, applicable law, and only those amounts actually disbursed, RoundPoint leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and state law only allow RoundPoint to pass along the actual cost of fees incurred by it to the borrower – here only a few cents per transaction. Similarly, federal and state law prohibit RoundPoint from charging any fees that are not explicitly included in the mortgage agreement. None of the Pay-to-Pay Fees are permitted by the mortgage agreements, and, therefore, RoundPoint violates federal and the laws of the various states by charging those fees.

6.     The Pay-to-Pay Fees are RoundPoint's fee and/or charge for rendering debt collection services and is designed to both cover an out-of-pocket expense that it has incurred in the collection of debts, as well as to increase its profit.

7.     Plaintiff Amye Elbert paid these Pay-to-Pay Fees, and she brings this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged Pay-to-Pay Fees and to enjoin RoundPoint from continuing to charge these unlawful fees.

**JURISDICTION AND VENUE**

8.     This Court has personal jurisdiction because RoundPoint conducts business in California and commits torts in California, as described in this Complaint.

9.     Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

10.    Venue is proper because this is where the cause of action accrued.

**PARTIES**

11.    Plaintiff Amye Elbert ("Ms. Elbert" or "Plaintiff") is a natural person residing in California who has a mortgage loan serviced by RoundPoint. Ms. Elbert made loan payments over the phone, and each time when she did so, RoundPoint charged her a Pay-to-Pay Fee. For example, on August 5, 2019,

and again September 4, 2019, RoundPoint charged Ms. Elbert a $12.00 Pay-to-Pay Fee for making a payment over the phone. RoundPoint's records reflected that these August and September 2019 payments were made at least 30 days after the date the payments were due.

12. Defendant RoundPoint is a Delaware corporation with a principal place of business in North Carolina.

## APPLICABLE LAW

**The FDCPA**

13. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

14. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

15. The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

16. The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

17. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

18. The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

19. The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

20. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**FHA Servicing Rules**

21.     FHA, an agency within the United States Department of Housing and Urban Development ("HUD"), "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories." The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."

22.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

23.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."

24.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." (*Id.*)

25.     RoundPoint is an FHA-approved Mortgagee.

26.     As an FHA-approved Mortgagee, RoundPoint must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, Handbooks, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."

27.     HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD Servicing Policy 4000.1: Single-Family Housing Policy, https://www.hud.gov/sites/documents/40001HSGH.PDF (last accessed by counsel on April 28, 2020) (the "HUD Servicing Policy").

28.     HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." *Id.*

29. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

30. FHA-insured mortgages contain uniform covenants.

31. In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges authorized by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13 (emphasis added).

32. This provision incorporates by reference HUD's limits on allowable fees.

33. The HUD Servicing Policy states that lenders:
> may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below. All fees must be:
>
> - reasonable and customary for the local jurisdiction
>
> - based on the actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; **and**
>
> - within the maximum amount allowed by HUD.

HUD Servicing Policy at 617-618 (emphasis added). In other words, lenders may only collect fees that are authorized by HUD, and fees that are authorized by HUD are only those fees that meet all three of the specified criteria. Thus, for example, a fee that is within the maximum amount allowed by HUD but also generates a profit for the lender would not be allowed.

34. To determine "the maximum amount allowed by HUD" for a fee, a lender must consult Appendix 3.0 of the HUD Servicing Policy, which contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees. Pay-to-Pay Fees are not on that list.

35. The HUD Servicing Policy further states "The Mortgagee must not charge the Borrower" for "costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity." HUD Servicing Policy at 618.

36. The HUD Servicing Policy provides that a "Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this SF Handbook." HUD Servicing Policy at 618.

37. Based upon information and belief, the Pay-to-Pay Fees that Defendants collect from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages. Moreover, because the Pay-to-Pay fees are both a cost in connection with a telephone call, and not included on Appendix 3.0, they, are not authorized, even if they are based on actual cost of work and are reasonable and customary for the given geographic region.

## FACTUAL ALLEGATIONS

38. RoundPoint is a loan servicer that operates around the country.

39. Each time a mortgage borrower whose loan is serviced by RoundPoint makes a payment over the phone ("Pay-to-Pay Transaction"), RoundPoint charges the borrower a Pay-to-Pay Fee: $10.00 for SpeedPay by Interactive Voice Response ("IVR"), and $12.00 for SpeedPay with representative assistance. RoundPoint's telephone Pay-to-Pay Transactions are processed by Western Union, through its SpeedPay system. The usual cost that a loan servicer pays Western Union to process Pay-to-Pay Transactions payments is $0.50 or less for each transaction. Therefore, the actual cost for RoundPoint to process telephone Pay-to-Pay Transactions is well below the amounts charged to borrowers, and RoundPoint illegally pockets the difference as profit.

40. The Uniform Mortgages of RoundPoint's customers do not authorize RoundPoint to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate borrowers' mortgages.

### Named Plaintiff's Facts

41. On or around October 19, 2015, Ms. Elbert purchased a home in Antioch, California, through a loan from First California Mortgage Company, secured by a mortgage on the property (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A**. Ms. Elbert took out the mortgage loan secured by her property for personal, family, or household uses.

42. The Mortgage Agreement is a deed of trust conforming to the model mortgage document prescribed by the FHA. As such, the Mortgage Agreement contains "Uniform Covenants" that are standard among deeds of trust securing mortgage loans insured by the FHA.

43. Uniform FHA multistate promissory notes, which Ms. Elbert signed in connection with the subject loan, define "Default" as the failure to make a mortgage payment on the due date: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." *See* **Exhibit B** attached, ¶ 6(B). Under the note, mortgage payments are due on the first day of each month, subject to a 15-day grace period after which a late charge may be imposed. *Id.* ¶¶ 3(A), 6(A).

44. At some point, RoundPoint acquired the servicing rights to the loan through an assignment of such rights.

45. Ms. Elbert sometimes makes mortgage payments over the phone. Each time she does so, RoundPoint charges her a fee.

46. For example, on August 5, 2019, and again September 4, 2019, RoundPoint charged Ms. Elbert a $12.00 Pay-to-Pay Fee for making a payment over the phone. These fees are not authorized by the Mortgage Agreement.

47. Under her note, Ms. Elbert's mortgage payments are due on the 1st day of each month. Ex. B, ¶ 3(A). According to RoundPoint's records, Ms. Elbert's payment on August 5, 2019, was applied to the payment due July 1, 2019. Similarly, RoundPoint's records reflect that it applied Ms. Elbert's payment on September 4, 2019 to the payment due August 1, 2019. Accordingly, when it assessing Pay-to-Pay Fees of $12 on each of these two payments, RoundPoint considered the payments to be made on past-due amounts, and thus, while the mortgage was due and owing. It further considered Ms. Elbert to be in default at the time she made her payments and was charged Pay-to-Pay Fees on August 5, 2019 and September 4, 2019. RoundPoint collected a $12 Pay-to-Pay Fee from Ms. Elbert on other dates, including May 3, 2019 and November 1, 2018; its records reflect that each of these times, it applied it to payments it had recorded as being at least 30 days past due.

48. Before remitting payment to RoundPoint, Ms. Elbert was not aware of all material facts, including the fact that (1) the Pay-to-Pay Fees were not authorized by her contract and was otherwise

unlawful; and (2) RoundPoint was pocketing a substantial amount of the fee as profit, unrelated to any vendor expense or out-of-pocket costs.

49. In requesting the payment of Pay-to-Pay Fees without disclosing all material facts, RoundPoint made the implied representation that the fees were legal to charge, despite the fact that no portion of the fee would be applied to the balance of the mortgage debt.

50. RoundPoint collects the Pay-to-Pay Fees even though it knows that such fees were not authorized under the Mortgage Agreement and that it therefore has no right to collect them.

51. Like many mortgages serviced by RoundPoint, Ms. Elbert's has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

52. HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Servicing Policy. *See* § 4000.1; § III(A)(1)(f). Servicers seeking to access fees "not specifically mentioned" in the HUD Servicing Policy must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity." *Id.* § III(A)(1)(f)(C).

53. As set forth above, the HUD Servicing Policy does not authorize Pay-to-Pay Fees. RoundPoint has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

54. Like other FHA mortgages, Ms. Elbert's mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 13.

55. Pay-to-Pay Fees are not "authorized by the Secretary." Thus, by charging Pay-to-Pay Fees not authorized by the Secretary, RoundPoint violated the Mortgage Agreement.

56. Like other Uniform Mortgages backed by government agencies, Ms. Elbert's Mortgage Agreement also states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 13. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2. The Mortgage

Agreement further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located." Ex. A ¶ 15.

57. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violates the laws of the various states that regulate debt collection practices and mortgage servicing activities, which prohibit, among other things, the assessment and collection of fees from borrowers that are not expressly authorized by the terns of their of their mortgage agreements or permitted by applicable law. *See, e.g.*, Rosenthal Act, Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17.

58. By collecting Pay-to-Pay Fees in violation of "Applicable Law," RoundPoint breached and continues to breach the uniform covenants of the Mortgage Agreement.

59. Even if RoundPoint is allowed to collect a fee under the auspice that it is a default related fee, under Paragraph 9 of the Mortgage Agreement, RoundPoint's demand for payment of Pay-to-Pay Fees was and is a direct breach of that paragraph, too. Paragraph 9 of the Mortgage Agreement states that only "amounts *disbursed* by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added). RoundPoint collects more than the amount it disbursed to process the Pay-to-Pay Transactions.

60. The above paragraphs are contained in the "Uniform Covenants" section of the Mortgage Agreement. They are substantially similar to covenants contained in other Uniform Mortgages backed by government agencies that require that any fees assessed be expressly authorized by existing law. RoundPoint thus breached its contracts on a classwide basis.

61. Prior to filing this Complaint, Ms. Elbert made a written pre-suit demand upon RoundPoint.

62. RoundPoint was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so.

**CLASS ACTION ALLEGATIONS**

63. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of the following class:

**All persons who (1) were borrowers on residential mortgage loans on properties in the United States whose loans were serviced by RoundPoint, and (2) paid a fee to RoundPoint for making a loan payment by telephone or IVR from January 1, 2016 to May 31, 2021.**

64. Class members are identifiable through Defendant's records and payment databases.

65. Excluded from the Classes are the Honorable Maxine Chesney, counsel to the Parties, Bruce Friedman, and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; RoundPoint, any entity in which RoundPoint has a controlling interest, any of RoundPoint's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt-out of the Class.

66. Plaintiff proposes that she serve as class representative.

67. Plaintiff and the members of the Classes ("Class Members") have all been harmed by the actions of RoundPoint.

68. Numerosity is satisfied. There are thousands of class members. Individual joinder of these persons is impracticable.

69. There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

    a. Whether RoundPoint assessed Pay-to-Pay Fees on Class Members;

    b. Whether RoundPoint breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements;

    c. Whether RoundPoint violated the FDCPA;

    d. Whether RoundPoint violated state and consumer debt collection statutes;

    e. Whether RoundPoint's business practices are unfair;

    f. Whether RoundPoint's business practices are unlawful;

    g. Whether RoundPoint's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

    h. Whether Plaintiff and Class Members were damaged by RoundPoint's conduct;

    i. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages as a result of RoundPoint's actions;

    j. Whether Plaintiff and Class Members are entitled to restitution;

    k. Whether Plaintiff and Class Members are entitled to attorney's fees and costs.

70. The deeds of trust or mortgage agreements securing the loans of Class Members are Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages that incorporate the same or substantially the same uniform covenants as those contained in Plaintiff's Mortgage Agreement.

71. Plaintiff's claims are typical of the claims of the Class Members. RoundPoint charged her Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiff and the Class Members entered into uniform covenants in their mortgage agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by RoundPoint to process Pay-to-Pay Transactions.

72. Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class Members and she will adequately and fairly protect the interests of the Class Members. Plaintiff has taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

73. Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of this controversy.

74. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I
### Breach of Contract

75. Paragraphs 1 to 74 are incorporated herein by reference.

76. Ms. Elbert and the Class Members entered into contracts with RoundPoint. RoundPoint breached its contracts with Ms. Elbert and the Class Members when it charged Pay-to-Pay Fees not agreed

to in their mortgage agreements, specifically prohibited by their mortgage agreements, and in excess of the amounts actually disbursed by RoundPoint to pay for the cost of Pay-to-Pay Transactions.

77. Ms. Elbert purchased a home subject to the Mortgage Agreement. *See* Ex. A.

78. At some point, RoundPoint was assigned the servicing rights to the loan. As servicer, RoundPoint has the right to collect payments and perform services for the borrower on behalf of the lender. The Mortgage Agreement provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 19.

79. The Mortgage Agreement further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 19) and benefit the successors and assigns of Lender." Ex. A ¶ 12.[1] RoundPoint thus became bound as an assignee to the Mortgage Agreement at the time it acquired the servicing rights to the subject mortgage loan.

80. Ms. Elbert sometimes makes mortgage payments over the phone. Each time she does so, RoundPoint charges her a fee of $10.00 or $12.00. For example, on August 5, 2019, and again September 4, 2019, RoundPoint charged Ms. Elbert a $12.00 Pay-to-Pay Fee for making a payment over the phone. These fees are not authorized by the Mortgage Agreement.

81. The contracts were breached in at least one of two ways. First, like many mortgages serviced by RoundPoint, Ms. Elbert has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the

---

[1] Section (or Paragraph) 19 provides:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change under the Loan Servicer, Borrower will be given written notice of the change . . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Ex. A ¶ 19.

1 lender may only assess fees authorized by the Secretary of HUD. HUD permits servicers of FHA
2 mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix
3 3 to the HUD Servicing Policy. *See* § 4000.1; § III(A)(1)(f). Servicers seeking to access fees "not specifically
4 mentioned" in the HUD Servicing Policy must request approval from the National Servicing Center to
5 charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities
6 that are normally considered a part of a prudent Mortgagee's servicing activity." *Id.* § III(A)(1)(f)(C).

82. The HUD Servicing Policy does not authorize Pay-to-Pay Fees. RoundPoint has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

83. Like other FHA mortgages, Ms. Elbert's mortgage states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 13.

84. Pay-to-Pay Fees are not "authorized by the Secretary." Thus, by charging Pay-to-Pay Fees not authorized by the Secretary, RoundPoint violated the Mortgage Agreement.

85. Second, the contracts were breached as to all Class Members because Plaintiff's Mortgage Agreement incorporates some standard provisions used in both FHA model mortgages as well as other government-backed model mortgages, including Fannie Mae/Freddie Mac model mortgages, including the prohibition that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 13.

86. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2.

87. The Mortgage Agreement states that it is "governed by federal law and the law of the jurisdiction in which the Property is located." Ex. A ¶ 15.

88. Charging Pay-to-Pay Fees not authorized by the laws of the various states that regulate debt collection practices and mortgage servicing activities.

89. By collecting Pay-to-Pay Fees in violation of "Applicable Law," RoundPoint breached and continues to breach the uniform covenants of the Mortgage Agreement.

90. Even if RoundPoint is allowed to collect a fee under the auspice that it is a default related fee, under Paragraph 9 of the Mortgage Agreement, RoundPoint's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 of the Mortgage Agreement states that only "amounts *disbursed* by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added). RoundPoint collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

91. Because the above provisions regarding "Applicable Law" are contained in the "Uniform Covenants" section of the Mortgage Agreement, and because members of the Class have mortgage agreements containing the same or similar provisions, RoundPoint has breached its contracts with the Class on a class-wide basis.

92. Ms. Elbert and the members of the Class were harmed by this breach.

## COUNT II
### Violations of the FDCPA

93. Paragraphs 1 to 74 are incorporated herein by reference.

94. Ms. Elbert and the class are "consumers" as defined by 15 U.S.C. § 1692a(3) because she purchased a home in California by mortgage primarily for personal, family, or household use.

95. RoundPoint is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another.

96. RoundPoint is a "debt collector" as defined by 15 U.S.C. § 1692a(6) on Ms. Elbert's loan because every month since it began servicing the loan it collected the Phillips' loan payments on behalf of Ms. Elbert's lender pursuant to an assignment from the lender. RoundPoint likewise was a "debt collector' when it collected debts from Class members.

97. Ms. Elbert's loan was in default when RoundPoint obtained the servicing rights to her mortgage. Therefore, RoundPoint cannot avail itself of any FDCPA "safe harbor" protection for loan servicers.

98. RoundPoint violated 15 U.S.C. § 1692f as to Ms. Elbert and the Class when it collected Pay-to-Pay fees that were neither expressly authorized by the agreement creating the debt nor permitted by law.

99. As a result of RoundPoint's violation of 15 U.S.C. §§ 1692f, Ms. Elbert and the Class were harmed monetarily and are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692k, together with reasonable attorney's fees and costs.

## COUNT III
### Violations of State Debt Collection and Mortgage Servicing Laws

100. Paragraphs 1 to 74 are incorporated herein by reference.

101. The laws of the various states regulate debt collection practices and mortgage servicing activities, including, but not limited to, incorporating provisions of the FDCPA and making those provisions independently actionable under state law, as well prohibiting additional unfair, unconscionable, and/or deceptive acts committed in the course of collecting on consumer debt (collectively "State Debt Collection Laws"). These State Debt Collection Laws include the laws of any and all of the fifty states and the District of Columbia that regulate the conduct of debt collectors and/or mortgage servicers in consumer transactions. Examples of these State Debt Collection Laws include, but are not limited to, California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788.01 *et seq.*; Florida's Consumer Collection Practices Act, Fla. Stat. 559.55, *et seq.*; Maryland Consumer Debt Collection Act, Md. Code, Com. L., § 14-202 *et seq.*; the North Carolina Debt Collection Act, N.C. Gen. Stat., § 75-55, *et seq.;* the North Carolina Debt Collection and Mortgage Servicing Act, N.C. Gen. Stat. § 45-91, *et seq.,* Texas Debt Collection Act, Tex. Fin. Code § 392.303, *et seq.;* and any state law that borrows or is predicated on the federal Fair Debt Collection Practices Act.

102. Plaintiff and the class are consumers who engaged in consumer debt transactions when they took out mortgage loans secured by their homes for personal and household use within the meaning of the State Debt Collection Laws.

103. RoundPoint is a debt collector that collects debts incurred for personal and household use within the meaning of the State Debt Collection Laws.

104. RoundPoint's collection of monthly mortgage payments are attempts to collect debts arising out of consumer transactions within the meaning of the State Debt Collection Laws.

105. Pay-to-Pay Fees are prohibited under State Debt Collection Laws, because, they are: (a) fees incidental to the principal debt when such a fee is not express authorized by the agreement creating the debt or applicable law; (b) a portion of the debt collector's fee that is passed on to the consumer in violation of applicable law; (c) not authorized by the Secretary of HUD and/or any other relevant governmental authority; and/or (d) otherwise an unfair, unconscionable, and/or deceptive means of collecting a consumer debt under the State Debt Collection Laws.

106. As a result of RoundPoint's collection of Pay-to-Pay fees, Plaintiff and the class have suffered financial damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that the Court:

107. Certify the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

108. Award damages, including compensatory and exemplary damages, to Plaintiff and the Class in an amount to be determined at trial;

109. Award statutory damages and/or penalties to Plaintiff and the Class;

110. Award injunctive relief requiring RoundPoint to cease collection of all improperly charged fees;

111. Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

112. Award pre- and post-judgment interest to the extent provided by law; and

113. Award such further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated: November 5, 2021                                         Respectfully Submitted,

/s/ *Kristen G. Simplicio*
Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)

TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
202-463-2101 (p)
202-463-2103 (f)
jkauffman@baileyglasser.com

Todd Walburg (SBN 213063)
BAILEY & GLASSER, LLP
475 14th Street, Suite 610
Oakland, CA 94612
510-207-8633 (p)
twalburg@baileyglasser.com

Victor S Woods (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
304-345-6555 (p)
304-342-1110 (f)
vwoods@baileyglasser.com


*Counsel for Plaintiff and Putative Class*