Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202-463-2101
Facsimile: 202-463-2103
jkauffman@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>    Defendant. | Case No. 3:20-cv-00250-MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**Date**: April 15, 2022<br>**Time**: 9:00 A.M.<br>**Courtroom:** VIA ZOOM<br><br>**Judge**: Hon. Maxine M. Chesney<br>**Complaint Filed**: January 13, 2020<br>**Trial Date**: None Set |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **April 15, 2022, at 9:00 a.m.**, or as soon thereafter as this matter may be heard, in Courtroom 7, before the Honorable Maxine Chesney, Plaintiff Amye Elbert, by and through her undersigned counsel of record, will and hereby does respectfully move this Court for an order granting final approval of the parties' proposed Settlement Agreement and Release dated September 30, 2021.[1]

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Settlement Agreement, the accompanying declaration of Paul Ferruzzi of Kroll Settlement Administration ("Ferruzzi Decl."), the pleadings and papers on file in this action, and any additional information or arguments as the Court may consider.

Dated: April 1, 2022                                   Respectfully submitted,


                                                       */s/ Kristen G. Simplicio*
Todd Walburg (SBN 213063)                              Kristen G. Simplicio (SBN 263291)
BAILEY & GLASSER LLP                                   Hassan A. Zavareei (SBN 181547)
1999 Harrison St., Suite 660                           TYCKO & ZAVAREEI LLP
Oakland, CA 94612                                      1828 L Street NW, Suite 1000
Telephone: (510) 207-8633                              Washington, D.C. 20036
Facsimile: (510) 463-0291                              Telephone: 202-973-0900
twalburg@baileyglasser.com                             Facsimile: 202-973-0950
                                                       ksimplicio@tzlegal.com
James L. Kauffman (admitted *pro hac vice*)            hzavareei@tzlegal.com
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW                       Victor S. Woods (admitted *pro hac vice*)
Washington, D.C. 20007                                 BAILEY & GLASSER LLP
Telephone: (202) 463-2101                              209 Capitol Street
Facsimile: (202) 463-2103                              Charleston, West Virginia
jkauffman@baileyglasser.com                            (304) 345-6555 (p)
                                                       (304) 342-1110 (f)
                                                       jmarshall@baileyglasser.com

                                                       *Attorneys for Plaintiff and the Putative Class*

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Settlement Agreement. ECF No. 78-3.

Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202-463-2101
Facsimile: 202-463-2103
jkauffman@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMYE ELBERT, on behalf of herself and all other similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORPORATION,<br><br>            Defendant. | Case No. 3:20-cv-00250-MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**Date**: April 15, 2022<br>**Time**: 9:00 A.M.<br>**Courtroom:** VIA ZOOM<br><br>**Judge**: Hon. Maxine M. Chesney<br>**Complaint Filed**: January 13, 2020<br>**Trial Date**: None Set |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:20-cv-00250-MMC

1

## TABLE OF CONTENTS

2    I.     INTRODUCTION ................................................................................................ 1

3    II.    LITIGATION AND SETTLEMENT HISTORY ................................................ 2

4    III.   SUMMARY OF THE SETTLEMENT BENEFITS ........................................... 3

5    IV.   CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT ........................................... 4

6    V.    LEGAL STANDARD FOR FINAL APPROVAL ........................................... 5

7    VI.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ............................................. 6

8          A.    The Settlement is Fair. ................................................................. 6

9               1.    The Settlement was negotiated at arm's length. .................................... 7

10              2.    The Settlement was informed by extensive investigation and discovery. ...................... 7

11              3.    Experience Class Counsel negotiated the Settlement. ................................ 7

12          B.    The Settlement is Adequate. ............................................................... 8

13          C.    Additional Criteria Demonstrate the Settlement is Reasonable. ............................ 8

14              1.    The Settlement provides excellent relief to the Class. ................................ 9

15              2.    The Settlement eliminates the risk of no recovery. .................................. 9

16              3.    The Settlement compares favorably compared to the potential relief. ................. 10

17              4.    The Settlement enjoys overwhelming Class support. ................................ 11

18          D.    The *Cy Pres* Award Will Benefit the Class. ............................................. 12

19    VII.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. ............................ 12

20    VIII.  UPDATE ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEE, REIMBURSEMENT OF

21          EXPENSES AND SERVICE AWARD. ............................................................. 13

22    IX.   CONCLUSION ............................................................................................. 13

23

24

25

26

27

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.,*
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................ 7

*Alexander, et al. v. Carrington Mortg. Svcs., LLC,*
  23 F. 4th 370 (4th Cir. 2022) ................................................................. 8

*Avina v. Marriott Vacations Worldwide Corp.,*
  No. SACV18685, 2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) ................ 5

*Briseno v. Henderson,*
  998 F.3d 1014 (9th Cir. 2021) ......................................................... 6, 8

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ................................................... 5, 6, 11

*Custom LED, LLC v. eBay, Inc.,*
  No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ...... 10

*De Leon v. Ricoh USA, Inc.,*
  No. 18-cv-03725-JSC, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) ...... 12

*Fraley v. Batman,*
  638 F. App'x 594 (9th Cir. 2016) .................................................... 12

*Garcia v. Nationstar Mortgage LLC,*
  No. 2:15-cv-01808 TSZ (W.D. Wash.) ............................................. 11

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ................................................ 5, 6, 9, 12

*In re Anthem, Inc. Data Breach Litig.,*
  327 F.R.D. 299 (N.D. Cal. 2018) ........................................................ 9

*In re Bluetooth Headset Products Liability Litigation,*
  64 F.3d 935 (9th Cir. 2011) ........................................................ 1, 5, 6, 8

*In re Grumman Corp. ERISA Litig.,*
  No. 06-cv-6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ............ 8, 13

*In re Hyundai and Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019) ............................................................. 5

*In re: Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ............................................................ 11

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ............................................................. 9

*Marshall v. Northrop Grumman Corporation* ("*Grumman II*"),
    No. 16-cv-6794, 2020 WL 5668935 (C.D. Cal. Sept. 28, 2020) ...................................... 8

*McWhorter v. Ocwen Loan Servicing*, LLC,
    No. 2:15-cv-1831, 2017 WL 4304625 (N.D. Ala. Sept. 28, 2017) ................................... 11

*Nachshin v. AOL LLC*,
    663 F.3d 1039 (9th Cir. 2011) ......................................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 6, 9, 10

*Officers for Just. v. Civ. Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................. 1, 6, 10

*Perkins v. LinkedIn Corp.*,
    No. 5:13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ........................... 11

*Phillips v. Caliber Home Loans, Inc.*,
    No. 19-cv-2711 (D. Minn. Dec. 4, 2020) ....................................................................... 11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................................. 6

*Stewart v. Applied Materials, Inc.*,
    No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ............................... 7

*Thomas-Lawson, et al. v. Carrington Mortg. Svcs., LLC*,
    Case No. 21-55459 (9th Cir., pending) .............................................................................. 8

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................................... 5, 6

## I.   INTRODUCTION

Plaintiff Amye Elbert ("Ms. Elbert" or "Class Representative"), individually and on behalf of the proposed Settlement Class, respectfully seeks final approval of a proposed Settlement Agreement and Release ("Agreement"), which resolves claims arising out of Defendant RoundPoint Mortgage Servicing Corporation's ("RoundPoint") practice of charging fees for making mortgage payments over the phone or by interactive voice response ("IVR") automated telephone system ("Pay-to-Pay Fees" or "Convenience Fees"). The Settlement achieves an exceptional result for the Class, as it establishes a $1,600,000 Common Fund that will provide cash payments to Class Members, and cover administration costs, reasonable attorneys' fees and expenses and a service award. And, as a result of this lawsuit, RoundPoint has agreed to cease charging Pay-to-Pay Fees for all borrowers in the United States effective June 1, 2021 and continuing until at least two years after the date the Court grants final approval of the Settlement. This will provide Class Members with additional valuable relief. After a robust direct notice campaign, no class member objected or opted out, demonstrating the fairness of the Settlement as a whole.

The Settlement is "fair, reasonable, and adequate to all concerned" and therefore merits final approval. *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, the Settlement avoids any of the potential "red flags" identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 64 F.3d 935, 947 (9th Cir. 2011). Here, Ms. Elbert and RoundPoint (collectively, "the Parties) did not discuss any award of attorneys' fees during their arm's length negotiations with a mediator, and there is no clear-sailing provision that prevents RoundPoint from challenging the fee award. Indeed, the fee award still leaves a settlement fund that provides adequate compensation of the Class, maximizes redemption by automatically paying Class Members instead of requiring them to submit claims, and provides that no portion of the settlement fund will revert to RoundPoint. This Settlement is a superb result for the Class, considering the hotly contested legal theories that made continued litigation risky, with the chance of no recovery at all.

On November 5, 2021, the Court preliminarily approved the Settlement. ECF No. 85. Since then, the Parties have complied with the Agreement and the Court's Preliminary Approval Order and provided notice to the Class. The response rate confirms that the Class Notice effectively provided the best notice

practicable as required by due process. Indeed, there have been 7,418 unique visitors to the Settlement Website, and 609 calls to the Settlement Administrator. Declaration of Paul Ferruzzi ("Ferruzzi Decl.") ¶¶ 6-7.

The response to the Settlement has been overwhelmingly favorable. The deadline to request exclusion to the Settlement or to object to the Settlement was March 18, 2022, and not a single Class Member opted out or objected. *Id.* ¶ 14.

For all of these reasons and the reasons set forth below, Ms. Elbert submits that the Settlement is fair, adequate, and reasonable, and should be finally approved. Therefore, Ms. Elbert respectfully requests that this Court: (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Amye Elbert as Class Representative, (5) affirm the appointment Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action.[2]

## II.    LITIGATION AND SETTLEMENT HISTORY

Ms. Elbert commenced this litigation on January 13, 2020. The complaint alleged that RoundPoint charged borrowers $10 and $12 fees for paying their monthly mortgage by phone or IVR. ECF No. 1. Ms Elbert alleged that these Convenience Fees violated California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"), and breached the borrowers' loan agreement, because the fees were not expressly authorized by the mortgage agreements or permitted by law, and the fees represented RoundPoint's fees for collecting payments. *Id.*

After Plaintiff filed her Complaint, RoundPoint filed its first motion to dismiss the Complaint on March 6, 2020 and Plaintiff opposed. *See* ECF Nos. 24, 29–32. On August 19, 2020 the Court ruled on the motion without a hearing, granting the motion to dismiss in part and denying in part and also affording

---

[2] As set forth in Plaintiff's January 21, 2022 Motion, ECF No. 93, Ms. Elbert requests an award of attorney's fees of one-third of the Common Fund, $533,280, reimbursement of litigation costs of $8,826.95, and a class representative service award of $5,000.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

2

Plaintiff leave to amend. *See* ECF Nos. 33–34, 43. Plaintiff filed an Amended Complaint and Defendant again filed a motion to dismiss, which was opposed by the Plaintiff. *See* ECF Nos. 44–47, 49–52. On November 25, 2020, the Court issued an order without a hearing, granting in part and denying in part the motion, permitting all but one of Plaintiff's claims to proceed. *See* ECF No. 56. The parties then commenced discovery and Plaintiff served written discovery requests and a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).

After lengthy discussions, the Parties agreed to engage in mediation with the assistance of Bruce Friedman, an experienced mediator with JAMS, to explore whether a negotiated resolution was possible. The Parties exchanged mediation statements and RoundPoint provided necessary class data to Plaintiff's counsel. The Parties attended a full-day mediation with Mr. Friedman on May 25, 2021. After a full day of hard-fought negotiations, where both sides made presentations to the mediator and all attendees, the parties reached an agreement on all material terms, including the amount of the Common Fund and the scope of injunctive relief. Class Counsel prepared the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language of the Agreement. Notably, there was no "clear sailing" provision in any of the terms negotiated by the Parties. *See* ECF No. 78-3, ¶ IV.E.

On September 30, 2021, the Parties executed the Settlement Agreement. Ms. Elbert filed a Motion for Preliminary Approval of Settlement, which the Court granted on November 5, 2021. ECF No. 85.

## III.   SUMMARY OF THE SETTLEMENT BENEFITS

The proposed Agreement establishes a $1,600,000 Common Fund to benefit the Class. The Common Fund shall be used to make Settlement Payments, and to pay any fee and expense award, any service award, and all administrative costs. ECF No. 78-3, ¶ IV.A. The Common Fund represents 35% of the total amount of Convenience Fees paid by the Class during the Class Period. After payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, Settlement Class Members are entitled to receive monetary benefits from the Net Settlement Fund on a *pro rata* basis, based upon the amount of Convenience Fees paid by each Settlement Class Member during the Class Period. *Id.* at § IV.A.

## IV.     CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT

After preliminary approval, the Parties provided Notice of the Settlement in Accordance with the Parties' Agreement and this Court's Preliminary Approval Order and subsequent Order Approving Class Notices. *See* Ferruzzi Decl., ¶¶ 5-12. On December 21, 2021, Roundpoint provided the Settlement Administrator, Kroll Settlement Administration ("Kroll") with the Settlement Class Member List containing names, loan numbers, and last known mailing addresses for each Class Member. *Id.* ¶ 5.

In December and January, before notice was disseminated, Kroll (1) created the Settlement Website, which contained the Long Form Notice, *id.,* ¶ 6, 9, Exs. C, D; (2) established a toll free number, *id.* ¶ 7; (3) obtained a post office box for correspondence, exclusions, and objections, *id.,* ¶ 8, and (4) checked mailing addresses against the National Change of Address database maintained by the USPS, *id.* ¶ 5.

To disseminate the notice, Kroll carried out the terms of the Settlement Agreement as follows: (1) on January 12, after the Settlement Website went live, Kroll sent email notice to the 111,185 class members for whom RoundPoint provided an email address, *id.,* ¶ 10, Ex. F; (2) on January 19, Kroll sent Postcard notice to 12,429 Class Members for whom no email address was provided, *id.,* ¶ 9, Ex. E; (3) on January 26, after 17,915 emails had been returned as undeliverable, sent Postcard Notice to those Settlement Class Members via USPS first class mail, *id.* ¶ 10; (4) ran all 514 Postcard Notices returned as undeliverable through an address trace process with LexisNexis, and re-sent the notice to the 354 new addresses that it could locate, *id.* ¶ 11; and (5) re-mailed 33 Postcard Notices by USPS with forwarding addresses to the new addresses, *id.* ¶ 12. The Court-approved email and postcard notices were successfully delivered to 120,770 of the 123,614 identified Class Members, equating to a delivery rate of 99.9%.

The Court-approved Notices informed Class Members about the proposed Settlement, their rights as to the $1,600,000 Settlement Amount, their rights to object or opt-out of the Settlement, and the prospective request for attorneys' fees and reimbursement of litigation expenses and a service award. ECF No. 83, Ex. A3–C3.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

4

## V.    LEGAL STANDARD FOR FINAL APPROVAL

The law favors the settlement of class actions. *See, e.g., In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted). To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* In making this assessment, courts must consider the factors set out in Federal Rule of Civil Procedure 23(e):

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fᴇᴅ. R. Cɪᴠ. P. 23(e).

Before the 2018 revisions to Rule 23(e), the Ninth Circuit had developed its own list of factors to be considered when approving a settlement. *See e.g., Bluetooth*, 654 F.3d at 964 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina v. Marriott Vacations Worldwide Corp.*, No. SACV18685, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019). These factors include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

1  completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

2  governmental participant; and (8) the reaction of the class members of the proposed settlement. *Churchill*,

3  361 F.3d at 575; *see also Hanlon*, 150 F.3d at 1026.

4      The Court's role in reviewing "what is otherwise a private consensual agreement negotiated

5  between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

6  the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,

7  and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*,

8  688 F.2d at 625. To "smoke out potential collusion" and determine whether the settlement is "adequate"

9  the Court must "balance the 'proposed award of attorneys' fees' vis-à-vis the 'relief provided for the class.'"

10  *Briseno v. Henderson*, 998 F.3d 1014, 1023-24 (9th Cir. 2021) (quoting FED. R. CIV. P. 23(e)(2)(c)(iii)). To

11  scrutinize attorneys' fee arrangements, district courts should apply the factors established in *Bluetooth*. *See*

12  *Briseno*, 998 F.3d at 1026. The "red flags" identified in *Bluetooth* that may lead to a determination that the

13  settlement is inadequate are: (1) when class counsel receives "'a disproportionate distribution of the

14  settlement'"; (2) when there is a clear-sailing provision "under which the defendant agrees not to challenge

15  a request for an agreed-upon attorney's fee"; and (3) when the settlement contains a reverter allowing

16  unawarded fees to return to the defendant and not the class. *Id.* at 1023 (quoting *Bluetooth*, 654 F.3d at 947).

17  The proposed Settlement meets the requirements for final approval.

## VI.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

### A.   The Settlement is Fair.

20      The Settlement is presumptively fair as (1) it is the result of arm's length negotiations, (2) there has

21  been investigation and discovery sufficient to permit counsel and the Court to act intelligently, and (3)

22  counsel are experienced in similar litigation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)

23  (stating that the Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive,

24  negotiated resolution"); *see also id.* at 967 ("Parties represented by competent counsel are better positioned

25  than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Nat'l*

26  *Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("DIRECTV") (explaining

27  that class settlements are presumed fair when they are reached "following sufficient discovery and genuine

arm's length negotiation"); *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (explaining that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

### 1.   The Settlement was negotiated at arm's length.

The Settlement was negotiated at arm's length during an all-day mediation and subsequent settlement discussions facilitated by Mr. Friedman of JAMS. *See* ECF No. 78-2, ¶¶ 5–12. *See Adams v. Inter-Con Sec. Sys. Inc.,* No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Additionally, the Parties did not discuss attorneys' fees or a service award until after they had agreed upon the material terms of the Settlement. *See* ECF No. 78-2, ¶ 14. Thus, nothing should disturb the Court's preliminary determination that the proposed Settlement is the product of hard-fought settlement discussions and negotiations between Ms. Elbert and RoundPoint.

### 2.   The Settlement was informed by extensive investigation and discovery.

Before agreeing upon the terms of the Settlement, the Parties conducted a thorough examination and investigation of the facts and law in this litigation. *See* ECF No. 78-2, ¶¶ 3–4. Class Counsel represents other plaintiffs in class actions against other mortgage loan servicers who charge these fees, and has litigated a number of the factual and legal issues here, and is thus familiar with the industry and state of the law. *Id.,* ¶ 8. Discovery was exchanged, which included information regarding the size of the Settlement Class and the amount of Convenience Fees collected by Roundpoint during the preceding several years. *Id.* ¶ 4, 7–8.  As a result, Class Counsel were well informed as to the novel and complex issues raised in this case.

### 3.   Experience Class Counsel negotiated the Settlement.

Class Counsel have extensive experience in complex litigation, consumer rights, and other class-action litigation, including class actions challenging Convenience Fees. *See* ECF No. 78-2, ¶¶ 25–31; ECF No. 78-5, ¶¶ 4–7; ECF No. 93-2, ¶¶ 5–6; ECF No. 93-3, ¶¶ 29–31. They are familiar with the risk associated with this litigation. Indeed, at the time the Settlement Agreement was reached, they were representing plaintiffs in two appeals of district court decisions concerning the same type of Convenience

Fees at issue here. In January 2022, the Fourth Circuit reversed the dismissal in favor of the plaintiff, *Alexander, et al. v. Carrington Mortg. Svcs., LLC*, 23 F. 4th 370 (4th Cir. 2022) ("*Alexander*"), but at the time of the settlement, success was not guaranteed. Moreover, the other appeal is still pending before the Ninth Circuit. *See Thomas-Lawson, et al. v. Carrington Mortg. Svcs., LLC*, Case No. 21-55459 (9th Cir., pending) ("*Thomas-Lawson*"). While Class Counsel expects the matter to be resolved favorably, there is no guarantee, and resolution could take much longer. Thus, based on this risk, and their experience, including with comparable cases that they have settled, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### B.     The Settlement is Adequate.

The Settlement Agreement reached by the Parties here is adequate in accordance with *Briseno v. Henderson*, 998 F.3d at 1026-28 (applying *Bluetooth* factors). Namely, it avoids all of the red flags of a class settlement discussed in *Bluetooth*. First, as discussed in more detail in Ms. Elbert's Motion for Fees, Costs, and Service Award, Class Counsel does not receive a disproportionate amount of the Settlement Fund when compared to the benefit to the Class. Rather, they seek a one-third fee of the Common Fund, which is within the range of reasonableness, given the exceptional settlement result. *See In re Grumman Corp. ERISA Litig.*, No. 06-cv-6213, 2017 WL 9614818, at *6 (C.D. Cal. Oct. 24, 2017) ("*Grumman*"); *see also Marshall v. Northrop Grumman Corporation* ("*Grumman II*"), No. 16-cv-6794, 2020 WL 5668935, at *2 (C.D. Cal. Sept. 28, 2020) (applying the *Grumman* factors to award a one-third attorneys' fee). Second, there is no clear-sailing provision. Third, under no circumstances will any of the Settlement Fund revert to RoundPoint. None of the factors that might prevent this Court from finding that the Settlement is adequate under *Briseno* are present.

### C.     Additional Criteria Demonstrate the Settlement is Reasonable.

Although there is an initial presumption of fairness, the Court must independently analyze the Settlement to determine whether it is in the best interests of the Class, considering:

> [t]he strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

8

1  *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1026). Each of these

2  factors weighs in favor of finally approving the Settlement.

### 1.   The Settlement provides excellent relief to the Class.

4  The Settlement provides substantial monetary and non-monetary relief to the Class. Ms. Elbert

5  secured a Common Fund of $1,600,00 which constitutes approximately 35% of the total Convenience Fees

6  paid to RoundPoint during the Class Period. Each of the Settlement Class Members is entitled to receive

7  monetary benefits from the Net Settlement Fund on a *pro rata* basis, based upon the amount of

8  Convenience Fees paid by each Settlement Class Member during the Class Period. *Id.* at § IV.A.

9  Moreover, as a result of this litigation, RoundPoint ceased charging or collection Convenience Fees

10  to any Settlement Class Member and all borrowers in the United States as of June 1, 2021. As a result of

11  this Settlement, RoundPoint agreed to refrain from the charging or collection of Convenience Fees from

12  borrowers for a period of at least two years after entry of the Final Approval Order, while still offering

13  borrowers the option to make payments online or over the phone. Assuming the same rates of usage of

14  these payment options by the Class, Class Counsel estimates that the value of this change results in an

15  additional $2,000,000 in savings for the Class over the next two years. ECF No. 78-2, ¶ 13. Thus, this

16  Settlement provides additional, valuable benefits for the Class.

### 2.   The Settlement eliminates the risk of no recovery.

18  While the Settlement in this case would provide benefits to the Class that are certain, if Ms. Elbert

19  continued to litigate this case, the Class would likely not see any recovery for several more years, and there

20  is a risk that there would never be any recovery at all, particularly in light of the appellate review of similar

21  cases, as discussed in section III.A, *supra.*

22  The potential risks and duration of further litigation therefore support final approval. Courts have

23  long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of

24  "immediate recovery by way of the compromise to the mere possibility of relief in the future, after

25  protracted and expensive litigation." *DIRECTV*, 221 F.R.D. at 526; *see also In re Anthem, Inc. Data Breach*

26  *Litig.,* 327 F.R.D. 299, 318 (N.D. Cal. 2018) (noting that delay in recovery as a result of trial and appellate

1  proceedings weighs in favor of final approval where "[s]ettlement provides the Class with timely, certain,

2  and meaningful recovery").

3        Here, Ms. Elbert and the Settlement Class Members face substantial risks. Indeed, as discussed in

4  the January 21, 2022 Motion for Fees, Costs, and Service Award, district courts have split on the threshold

5  legal question here of whether Convenience Fees are prohibited by state and federal debt collection statutes

6  and the borrowers' mortgage agreements. *See* ECF No. 93 at 7–8 (citing cases). Since the Settlement

7  Agreement was reached, the Fourth Circuit resolved this in favor of the plaintiffs there, but an appeal on

8  this issue is still pending before the Ninth Circuit. *See* § III.A.3, *supra*. While Ms. Elbert believes that her

9  view of the law will ultimately be endorsed by appellate courts, to get there, this case could have been

10  stayed and taken years to achieve full recovery. By settling now in the early stages, this risk as well as the

11  risks and costs associated with expert discovery and litigating additional dispositive motions and a motion

12  for class certification can be avoided.

13        Moreover, early resolution conserves resources and leaves more funds available for Settlement

14  Class Members. Had litigation progressed, the Parties would need to resolve discovery disputes and incur

15  the expense and burden of preparing for trial. Even if Ms. Elbert succeeded at class certification and on the

16  merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation and

17  expensive discovery would lead to greater benefits for the Settlement Class Members. Instead, there would

18  be multiple points at which the Class's claims could be narrowed or dismissed. Thus, the Settlement

19  eliminates the various risks including complete lack of recovery which is possible with further litigation.

20             **3.    The Settlement compares favorably compared to the potential relief.**

21        A proposed settlement is not to be measured against "a hypothetical or speculative measure of

22  what might have been achieved." *Officers for Just.*, 688 F.2d at 625; *see also DIRECTV*, 221 F.R.D. at 527

23  ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a

24  fraction of the potential recovery that might be available to the class members at trial."); *Custom LED, LLC*

25  *v. eBay, Inc.,* No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held

26  that a recovery of only 3% of the maximum potential recovery is fair and reasonable ….").

27

Here, besides its substantial size in absolute numbers, the Settlement is fair and reasonable in relation to the Settlement Class's potential damages. As mentioned above, the Settlement Fund is 35% of the total amount of Convenience Fees collected by RoundPoint during the Class Period, a percentage that is in line with other court-approved settlements involving similar fees. *See* ECF No. 78-1, App'x A; *see also, e.g.*, *McWhorter v. Ocwen Loan Servicing*, LLC, No. 2:15-cv-1831, 2017 WL 4304625 (N.D. Ala. Sept. 28, 2017) (granting final approval of a settlement creating a $9.7 million common fund, representing 30% of the total fees collected); *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (D. Minn. Dec. 4, 2020) (granting preliminary approval of settlement creating a $5.0 million common fund, representing 29% of the total fees collected from the class members); *Garcia v. Nationstar Mortgage LLC*, No. 2:15-cv-01808 TSZ (W.D. Wash.) (granting final approval of a $3.875 common fund, representing 32% of the total amount of fees collected from class members).

And RoundPoints's agreement to cease charging Convenience Fees for at least two years provides an additional $2 million benefit to the Class. ECF No. 78-2, ¶ 13.

Accordingly, the relief provided by the Settlement favors final approval.

### 4. The Settlement enjoys overwhelming Class support.

In determining the fairness of a settlement, the Court should consider class member objections. The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are fair. *See, e.g.*, *Churchill*, 361 F.3d at 577 (approving a settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected to the settlement"). The opt-out and objection deadline was on March 18, 2022, and not a single Class Member opted out of the Settlement, nor did any Class Member object. Ferruzzi Decl. ¶ 14.

This support is particularly notable given the 99.9% rate of delivery of direct notice. The lack of objections and minimal opt-outs also indicate a favorable reaction by the Class Members to the proposed Settlement and provide further support for final approval. *See, e.g.*, *Perkins v. LinkedIn Corp.*, No. 5:13-cv-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. Feb. 16, 2016) ("low rates of objections and opt-outs are 'indicia of the approval of the class'" (citation omitted)); *In re: Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting that a low number of objectors (a "handful") and opt-outs (only one) supported trial

court's finding that settlement was "fair, adequate and reasonable"); *Hanlon*, 150 F.3d at 1027 (upholding approval of settlement where only 971 Class Members, or 0.1% of the class, opted out and only a few objected); *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *11 (N.D. Cal. Mar. 31, 2020) ("Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the Class Members." (internal quotation marks and citation omitted)).

### D.    The *Cy Pres* Award Will Benefit the Class.

To account for any money remaining in the Settlement Fund after settlement distribution, the Parties agreed upon NeighborWorks America ("NeighborWorks") as the *cy pres* recipient. The test for a district court to approve a *cy pres* distribution is whether there is an "appropriate nexus" between the recipient and the class members. *See Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016). There is a substantial nexus between Class Members and NeighborWorks, an organization that provides homeowners access to information to make smart financial decisions to ensure they can pay their mortgages and remain in their homes. *See* https://www.neighborworks.org/Homes-Finances/Financial-Health. Because Pay-to-Pay fees are typically paid by those homeowners who live on more fixed budgets and need more control over the timing of their mortgage payment than payment by mail or automatic debit would allow, NeighborWorks' mission is aligned with the objective of the litigation and the Settlement Class Members' interests. *See Nachshin v. AOL LLC*, 663 F.3d 1039, 1039 (9th Cir. 2011). The *cy pres* distribution means that in no event shall any remaining funds return to RoundPoint.

## VII.    THE CLASS SHOULD BE CERTIFIED FOR SETTLMENT PURPOSES.

For all of the same reasons the Court preliminarily certified the Settlement Class, none of which have changed, the Court should now grant final certification. The Settlement Class is sufficiently numerous, including over one hundred thousand consumers. There are common issues concerning the issues related to RoundPoint's practices and policies that predominate over individual issues. Ms. Elbert is typical of the Class because all her claims and the class claims against RoundPoint arise from the same course of conduct: charging borrowers Convenience Fees when making their monthly mortgage payments. Ms. Elbert has no conflicts with the Class, participated in this action, and is adequate. Class Counsel are experienced and

adequate. Finally, class treatment is superior because the Parties agreed to certification of the Settlement Class (ECF No. 78-3 at § III), the Court conditionally certified it, and the Court should now certify it at final approval.

## VIII. UPDATE ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEE, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD.

Ms. Elbert's Motion was filed on January 21, 2022 and separately addressed the amount of attorneys' fees, litigation expense reimbursement and service award. ECF No. 93. In addition to the description of the anticipated motion in the Notices, a copy of the Motion was immediately provided on the Settlement Website for Class Members to review. No Class Member has objected to the requested attorneys' fees, expense reimbursement, or service award.

Applying the relevant factors and as stated in Ms. Elbert's Motion, the Court should award the requested attorneys' fees, reimbursement of litigation expenses, and service award, which are commensurate with other approvals of similar requests in class actions before this district court. See *Grumman II*, 2020 WL 5668935, at *2, *9-12 (applying factors to award attorneys' fees of one-third of settlement fund, expense reimbursement, and a $25,000 service award for each of six named representatives).

## IX. CONCLUSION

For the reasons stated herein, Ms. Elbert respectfully requests that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Amye Elbert as Class Representative, (5) affirm the appointment of Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. By the separate motion filed on January 21, 2022, Ms. Elbert also requests that the Court grant a service award of $5,000 to her as class representative and award Class Counsel reasonable attorneys' fees of $533,280 and reimbursement of litigation expenses of $8,826.95 which, as set forth in the Settlement, shall be paid out of the Settlement Fund.

Dated: April 1, 2022

Respectfully Submitted,

 /s/  Kristen G. Simplicio
Kristen G. Simplicio (SBN 263291)
Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
ksimplicio@tzlegal.com
hzavareei@tzlegal.com

James L. Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
202-463-2101 (p)
202-463-2103 (f)
jkauffman@baileyglasser.com

Todd Walburg (SBN 213063)
BAILEY & GLASSER LLP
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: 510-207-8633
twalburg@baileyglasser.com

Victor S. Woods (*pro hac vice*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia
(304) 345-6555 (p)
(304) 342-1110 (f)
jmarshall@baileyglasser.com

*Attorneys for Plaintiff and the Putative Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-00250-MMC

14